WARE ADAMS *et al.*, Plaintiffs-Appellants, v. THOMAS R. MEYERS *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—92—0310

Opinion filed July 30, 1993.—Rehearing denied September 15, 1993.

478

Ware Adams, of Chicago, *pro se*, for appellants.

Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago (Michael D. Karpeles, William C. Meyers, and David J. Chizewer, of counsel), for appellees.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiffs, unit owners in an Illinois condominium association, filed a complaint attacking several association election practices. After holding multiple hearings on the issues raised, the trial court ultimately ruled that plaintiffs lacked standing and dismissed the suit. Plaintiffs now appeal.

On November 8, 1990, plaintiff Ware Adams (Adams) filed his original, two-count complaint (complaint) against the Carl Sandburg Village Condominium Association No. 7 (Association) and its board of managers (Board). The Association is formed subject to the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 301 *et seq.*) and is incorporated pursuant to the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1991, ch. 32, par. 101.01 *et seq.*; see Ill. Rev. Stat. 1991, ch. 32, par. 103.05(a)(25)). Adams was at the time, and apparently remains, a unit owner in the Association. He was also then a candidate for Board election. In count I, Adams sought to postpone the 1990 annual meeting of the Association, at which the

Association's election of Board members was scheduled to occur. Specifically, Adams alleged that: (1) the notice of the 1990 annual meeting was not timely delivered to unit owners; (2) the proxy contained in the notice mailing was defective and misleading; and (3) one of the options suggested by the proxy, by which a unit owner could deliver his blank proxy to the president of the Board and have it voted by a majority of the Board, was deceptive, fraudulent and violated Illinois law. Count II of Adams' complaint sought the production of certain Association documents. Although Adams originally sued both the Association and each of its Board members, he apparently only served the Association and Thomas Meyers, the Association's president. Adams did not bring his complaint as a derivative action or as a class action.

On the following day, November 9, 1990, Adams brought an "Emergency Motion" seeking a court order delaying the annual meeting. Following hearing, the trial court refused to postpone the meeting, but did strike from the Board's proxy language indicating that the form could not be photocopied. The trial court also indicated to the parties that any proxy complying with Illinois law was to be accepted at the meeting and indicated that unit owners could thereby revoke any proxy previously submitted to the Board. Adams did not appeal the trial court's order and was subsequently elected to the Board for a two-year term.

Approximately a year later, just prior to the 1991 election, the Board sent a letter dated October 31, 1991, to all unit owners (the October 31 letter). The October 31 letter and accompanying notice announced the November 12, 1991, annual meeting. The October 31 letter was also accompanied by biographies of the candidates, by the Association's "Official Proxy," as well as a stamped, self-addressed envelope. A subsequent letter, dated November 5, 1991, was also sent to all unit owners (the November 5 letter). The November 5 letter was apparently sent following complaints from Board candidate David DeHetre. The November 5 letter explained the rules regarding cumulative voting to unit owners and was accompanied by a proxy identical in form to the one which accompanied the November 5 letter.

On November 12, 1991, Adams amended his complaint by adding a third count and joining plaintiff David DeHetre. In count III, plaintiffs complained that: (1) the 1991 proxy and proxy solicitation materials failed to adequately inform unit owners of their right to cumulate their votes; (2) the notice of the annual meeting included with the October 31 letter discriminated against nonresident unit owners by arbitrarily setting November 5, 1991, as a deadline for nominating candi-

dates for Board election; (3) defendant Meyers improperly incurred costs to the Association by including a self-addressed stamped envelope with the October 31 letter and by mailing the November 5 letter without receiving proper authorization from the Board; (4) the biographical information forms of candidates included in the proxy materials discriminated in favor of incumbent Board members and violated the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(17)); and (5) the practice of the Board in voting blank proxies following the Association's annual meeting violated certain open meeting provisions of the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(9)). Count III of plaintiffs' complaint did not, however, challenge the timeliness of the 1991 annual meeting notice as Adams had done the previous year.

To put plaintiffs' claims in context, a brief review of the procedures used in the 1991 election is helpful. In order to vote at the 1991 election, a unit owner could choose any one of four methods as described by the materials included with the October 31 letter. First, a unit owner could appear at the annual meeting in person and cast a ballot in favor of any of the candidates. Second, the unit owner could vote by what the parties have referred to as a "restricted" proxy. Use of the restricted proxy simply involved the unit owner indicating in writing a preference for a particular candidate or candidates, including any write-in candidates, and such proxies would then be counted in strict accordance with the unit owner's wishes. Third, a unit owner could vote by "unrestricted" proxy, wherein the proxy would be given to a particular unit owner who would vote it as the proxy holder saw fit. Finally, a unit owner could designate the president as his proxy who would then vote such proxy in conformance with the wishes of the majority of the Board members present at the meeting, in accordance with a standing Board resolution (the Proxy Resolution). The proxies sent to all unit owners in both 1990 and 1991 indicated that proxies returned signed, but blank, would be voted in this way.

That same day, the day of the annual meeting, November 12, 1991, plaintiff Adams, along with plaintiff DeHetre, again brought an emergency motion seeking a temporary restraining order. In their motion, plaintiffs principally argued that the proxies were invalid because they failed to adequately inform unit owners of their right to cumulate their votes, and because certain proxies were to be voted pursuant to the Proxy Resolution. Believing that the disputed proxies might not substantively affect the outcome of the election and that the plaintiffs' arguments might then be moot, the trial judge ordered that the election could proceed, but restrained the Board from declar-

ing any official results until he had the opportunity to review the results.

Two days later, on November 14, 1991, the trial court was presented with the results of the election. At the hearing, the trial court held that "as a matter of law," the proxies which were restricted were valid, regardless of when they were dated. The court then ordered defendants to tabulate the election results, excluding unrestricted proxies dated prior to November 7, 1991, the date on which the trial court held that the November 5 letter would have been received, to determine if such an exclusion would have any impact upon the election results.

On November 18, 1991, the parties returned to court. From a recounting it was discovered that plaintiff DeHetre placed fifth and had won a full two-year term on the Board. In the original count he had lost. The fact that plaintiff DeHetre won a seat on the Board prompted the court to ask the following:

"THE COURT: All right. Let me ask you this question, since the two plaintiffs in this case both won election, if we count all the votes, what is their interest in pursuing this case?"

The hearing adjourned with the court requesting additional briefing from the parties on standing and mootness issues.

After hearing on November 27, 1991, the trial court denied plaintiffs' motion in its entirety and ordered that the Association's 1991 election results could be released as official election results with full force and effect. The court also found that the Association's notice regarding the election was legally sufficient, and that the challenged Proxy Resolution complied with applicable law. Plaintiffs did not appeal this order. However, the issues raised by count II of plaintiffs' complaint, the document production demand, remained unresolved.

At a status hearing on December 9, 1991, plaintiff Adams indicated that progress was being made on count II, the document production demands, but that questions remained as to the applicability in future elections of section 18(a)(17) of the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(17)). Section 18(a)(17) had recently been passed into law and plaintiffs contended that the application of this newly enacted section might become an issue in the 1992 elections. The court suggested that plaintiffs might wish to proceed under the declaratory judgment act (Ill. Rev. Stat. 1991, ch. 110, par. 2—701) and granted leave to file a motion and supporting memorandum on this issue. On December 20, 1991, plaintiffs filed their motion and memorandum. Instead of limiting their motion to the issue discussed on December 9, 1991, however, plaintiffs sought to raise

three issues: (1) whether section 18(a)(17) of the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(17)) nullified the Proxy Resolution; (2) whether the proxy provisions of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1991, ch. 32, par. 7.55), as well as "relevant [F]ederal principles," were applicable to the Association's proxy solicitations; and (3) whether the Board had the legal authority to vote a condominium unit owned by the Association itself. In addition, in their supporting memorandum, plaintiffs alleged that counsel representing the Association had a conflict of interest vis-a-vis individual Board members. Defendants filed a motion to strike plaintiffs' motion and memorandum for declaratory relief.

On January 13, 1992, after both sides had briefed defendants' motion to strike, the trial court entered an order which stated:

"1) The Court finds there to be no Judicial Controversy, no one being injured or threatened „with injury at this time and consequently, there additionally being no standing of any party plaintiffs;

2) That all issue[s] having been resolved this Cause is dismissed without cost or fees, and with prejudice."

Plaintiffs thereafter filed a notice of appeal seeking to raise the following issues (a review of the record and arguments raised on appeal indicates that all other issues raised by plaintiffs have been abandoned): (1) whether, "as unit owners," plaintiffs have standing to bring declaratory judgment action with regard to the Association's election practices; (2) whether the Board's 1990 notice of annual meeting and any related election materials were delivered untimely; (3) whether Illinois condominiums and not-for-profit corporations must make specific disclosures regarding cumulative voting when soliciting proxies; (4) whether condominium units owned by the Association itself may be voted by the Board; and (5) whether the Proxy Resolution complies with Illinois law. In addition, plaintiffs raise the issue of whether defendant Meyers is liable to the Association for certain acts committed while serving as president of the Board.

■ An initial question that must be addressed in this case is whether plaintiffs have standing to raise any of the issues they now bring. Plaintiffs have fashioned their case, at the trial court's suggestion, as a declaratory judgment action under section 2—701(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—701(a)). Under this section, "[t]he court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed." (Ill. Rev. Stat. 1989, ch. 110, par. 2—701(a).) The supreme

court has held that, to have standing, a plaintiff seeking declaratory relief "must present an actual controversy between adverse parties, as to which controversy the plaintiff is not merely curious or concerned about the outcome but possesses some personal claim, status, or right, a distinct and palpable injury to which is fairly traceable to the defendant's conduct and substantially likely to be prevented or redressed by the grant of such relief." (*Kluk v. Lang* (1988), 125 Ill. 2d 306, 314, citing *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 493.) Therefore, in order to bring a declaratory judgment action, plaintiffs must allege the following elements with regard to each of their claims: (1) a tangible legal interest; (2) facts indicating that defendants' conduct is opposed to those interests; and (3) an ongoing and actual controversy between the parties which is likely to be prevented or redressed by court action. See *Griffin v. County of Cook* (1938), 369 Ill. 380, 398 (Stone, J., specially concurring).

With regard to plaintiffs' election procedure challenges, defendants claim that because both plaintiff Adams and plaintiff DeHetre were ultimately elected to serve on the Board, neither has suffered injury to a tangible legal interest. (See *Goldstein v. Mitchell* (1986), 144 Ill. App. 3d 474, 485-86; *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 747-48.) Defendants also argue that plaintiffs lack standing because they can cite no specific statutory authority for bringing their election challenge. *In re Contest of the Election For the Offices of Governor & Lieutenant Governor* (1983), 93 Ill. 2d 463, 474; see also *Young v. Mikva* (1977), 66 Ill. 2d 579; *Brown v. VanKeuren* (1930), 340 Ill. 118; *Hall v. Thode* (1874), 75 Ill. 173; *Ross v. Kozubowski* (1989), 182 Ill. App. 3d 687; *Pinkerton v. Marcin* (1979), 67 Ill. App. 3d 628.

As noted, the Association is a not-for-profit corporation formed pursuant to the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1991, ch. 32, par. 101.01 *et seq.*). Significantly, none of the cases cited by defendants involving election challenges involve a challenge to a *corporate* election. Unlike a citizen who seeks to challenge a municipal or State election without the benefit of statutory authority to do so, plaintiffs' challenges are based upon specific allegations that defendants failed to conform their conduct to relevant statutory authority, to the Association's declaration and its bylaws. Unlike the average citizen who has been held to have " 'merely a general interest common to all members of the public' " (*Kluk v. Lang* (1988), 125 Ill. 2d 306, 318, quoting *Schlesinger v. Reservists Committee to Stop the War* (1974), 418 U.S. 208, 219-20, 41 L. Ed. 2d 706, 718, 94 S. Ct. 2925, 2931), the relation of a stockholder to a corporation is more concrete, being contractual in nature. (*Hanna v. Breese Trenton Min-*

*ing Co.* (1983), 114 Ill. App. 3d 657, 660; *Roth v. Ahrensfeld* (1939), 300 Ill. App. 312, 316, *aff'd* (1940), 373 Ill. 550. See also *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 397 ("[t]he basis for judicial reversal of association action has *** ordinarily been a violation of the constitution or bylaws of the association, or, that the association rules and proceedings violate concepts of fundamental fairness, or, that the association action was motivated by prejudice or bad faith") (Underwood, J., dissenting).) Thus, while plaintiffs must still allege an "actual, substantial injury and not one which is technical, inconsequential, or speculative" (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 750), it is clear that, as members of the Association, they have tangible and substantial legal interests in being represented by a duly elected board of directors. See *Kluk v. Lang* (1988), 125 Ill. 2d 306, 313-20 (discussing liberalization of the standing requirement under the declaratory judgment act and finding two voters to have standing to challenge the statutory procedure for filling legislative vacancies, despite fact that neither was a contender for office); see also *In Blasius Industries, Inc. v. Atlas Corp.* (Del. Ch. 1988), 564 A.2d 651; *Aprahamian v. H B O & Co.* (Del. Ch. 1987), 531 A.2d 1204.

The trial court's dismissal of plaintiffs' amended complaint was based upon the misconception that plaintiffs would have to have been at risk of losing an election to the Board or have actually lost such an election in order for them to have a tangible legal interest in the procedures used by the Board in conducting elections. A reviewing court may sustain a judgment, however, on any grounds called for by the record, regardless of the grounds relied upon by the trial court. (*Landmarks Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 174; *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502.) Because additional review will expedite the resolution of the claims raised below, issues raised and briefed by the parties are now considered, including remaining standing considerations.

■ First, plaintiffs claim that defendant Meyers has wasted the Association's assets by paying election-related expenditures without Board approval. An incorporated entity such as the Association, however, is an entity separate and distinct from its members. (*People v. Parvin* (1988), 125 Ill. 2d 519.) The Association's rights are its own and may not be directly championed by its members. In Illinois, such derivative suits require that demand be made upon the entity in whose favor the action is brought, as well as a showing that such demand was refused. (*Karris v. Water Tower Trust & Savings Bank* (1979), 72 Ill. App. 3d 339, 350; see also *Feen v. Ray* (1985), 109 Ill. 2d 339, 345-46 (taxpayer derivative suit).) Alternatively, plaintiffs may

show that such a demand would have been futile. (*Karris*, 72 Ill. App. 3d at 350.) Because plaintiffs have not fashioned their complaint in the form of a derivative suit, nor met the demand requirements of such an action, they fail to present a tangible legal interest in this claim. They therefore lack standing to challenge Meyer's conduct in this regard. But see *Sawko v. Dominion Plaza One Condominium Association No. 1—A* (1991), 218 Ill. App. 3d 521, 526.

In addition, and with specific regard to plaintiffs' general claims that Meyers has impermissibly used his position on the Board to manipulate Board elections, it should be noted that section 5.10 of the Association's declaration expressly provides that members of the Board shall not be liable for any mistake of judgment or for any other acts or omissions of any nature except for acts or omissions found by a court to constitute gross negligence or fraud. Such exculpatory clauses do not violate public policy. (*Kelly v. Astor Investors, Inc.* (1985), 106 Ill. 2d 505, 510; see also Ill. Rev. Stat. 1991, ch. 32, par. 108.70 (limiting directors and officer liability of not-for-profit corporations to acts or omissions amounting to willful or wanton conduct).) While it is true that such exculpatory clauses will not protect Meyers against conduct amounting to a breach of loyalty to the Association, plaintiffs have failed to plead sufficient facts to indicate that such is the case here. Thus, plaintiffs' claims against Meyers must be dismissed.

■ Next, plaintiffs allege that the Board failed to give them timely notice of the Association's 1990 and 1991 annual meetings by mailing such notices 10 days before the respective meetings. Article 5.05 of the Association's declaration provides that notices of meetings are to be *delivered* to unit owners no less than 10 days prior to the date fixed for such meeting. Adams alleged in count I of his complaint that he did not receive notice of the 1990 annual meeting until just eight days before the meeting. Additionally, while not raised in his amended complaint, plaintiffs now also argue that they received only eight days' notice for the Association's 1991 annual meeting. In reviewing his allegations with regard to the 1990 annual meeting during Adams' emergency motion, the trial court declined to stay the election and ultimately confirmed the election results. Adams did not appeal this decision.

We conclude that plaintiffs' failure to raise the notice issue with regard to the 1991 election has waived this claim. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1052; *Cosentino v. Price* (1985), 136 Ill. App. 3d 490, 494.) In addition, the passage of time with regard to the 1990 election

has rendered the issue moot and not, therefore, subject to review under the declaratory judgment act.

A case is said to be moot when it involves no real controversy. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 654.) Even when brought under the declaratory judgment act, a case should not be reviewed merely to resolve an abstract question, to establish a precedent, or to render a judgment to guide future potential litigation. (*Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189, 192; *Rasky v. Anderson* (1978), 62 Ill. App. 3d 633, 635.) Defendants argue that because the 1991 election has come and gone, and because the 1990 election results have been confirmed, there no longer exists a real controversy with regard to this issue. They cite *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, for the proposition that challenges to a private association's election are mooted by occurrence of subsequent elections. Plaintiffs do not disagree with this general principle, but argue that the "public interest exception" to the mootness doctrine should allow them to pursue their claim. See *Kohan*, 102 Ill. App. 3d at 528; *Kern v. Chicago & Eastern Illinois R.R. Co.* (1963), 44 Ill. App. 2d 468, 476.

In asserting that the public interest exception to the mootness doctrine should be invoked, plaintiffs allege that the Association's untimely notice in 1990 and 1991 constitutes a pattern of improper conduct. They also argue that a ruling on this issue would resolve an important question of public interest. It is important to bear in mind, however, that defendants have not argued that eight days' notice is sufficient under the declaration. Because the parties appear to be in agreement on the impropriety of eight days' notice, there no longer appears to be an ongoing and actual controversy with regard to this issue. It should also be noted that plaintiffs have not supplemented their pleadings with allegations that notice was tardy for the elections that presumably occurred in 1992. Again, courts of review should not issue opinions merely to establish precedent. The public interest exception to the mootness doctrine should not, therefore, be invoked.

■ Plaintiffs also seek a declaration that the Board's procedure in not disclosing to unit owners their right to cumulatively vote proxies was improper and that the failure to make such a disclosure necessarily interferes with the fairness of the election process. Both sides agree that section 5.06 of the Association's declaration guarantees members the right to cumulate their votes in Board elections. At a Board meeting on October 16, 1991, plaintiff Adams submitted the following resolution to the Board which the Board refused to adopt:

"RESOLVED: that the proxy form distributed by the association for board elections *** detail the right of the Unit Owner to cumulate his vote and vote all his individual votes for one candidate or to spread his vote for more than one candidate."

The three elements necessary to bring a claim under the declaratory judgment act are present under these facts. First, and as noted, plaintiffs have a tangible legal interest in being represented by a Board that is duly elected. Second, plaintiffs argue that the Association opposed plaintiff Adams' attempt to advance those interests when it refused to implement his resolution. Finally, while it might be argued that the November 5 letter sent by Meyers indicates that this issue is moot or that there is no ongoing and actual controversy between the parties with regard to this issue, a review of the arguments raised by defendants indicates that this is not the case. Defendants have taken the position that they were under no obligation to give notice to unit owners of cumulative voting rights. Presumably defendants will take such a position in future elections. In such circumstances court review is proper. *Kern v. Chicago & Eastern Illinois R.R. Co.* (1963), 44 Ill. App. 2d 468.

Despite the fact that plaintiffs have standing to raise this issue, however, the substance of their argument must fail. For support, plaintiffs cite provisions of both the Business Corporation Act (Ill. Rev. Stat. 1991, ch. 32, par. 7.55 (governing Illinois business corporation proxy solicitations)) and the federally enacted Securities Exchange Act of 1934 (15 U.S.C. §78n (1988); see also 17 C.F.R. §240.14a—9 (1992) (regulations governing proxy solicitations and cumulative voting disclosures under Federal securities law)). They argue that these provisions indicate the desirability of such a rule being applied to the Association.

As defendants contend, however, the Association was under no obligation to provide a detailed explanation of cumulative voting. As noted, Illinois condominium associations are governed by the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 301 *et seq.*). The Condominium Property Act comprehensively regulates the creation and operation of Illinois condominium associations. The Condominium Property Act sets forth several detailed requirements concerning voting, and, in particular, contains two requirements with respect to proxies. The first is found in section 18(a)(18), which requires only that:

"[A]ny proxy distributed for board elections gives unit owners the opportunity to designate any person as the proxy holder and gives the unit owner the opportunity to express a prefer-

ence for any of the known candidates for the board or to write in a name." (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(18).)

The second provision is found in section 18(b)(9), which states:

"that unless the Articles of Incorporation or the bylaws otherwise provide, a unit owner may vote by *** his duly authorized attorney in fact; that the proxy shall be invalid after 11 months from the date of its execution, unless otherwise provided in the proxy, and that every proxy must bear the date of execution." (Ill. Rev. Stat. 1991, ch. 30, par. 318(b)(9).)

A review of the record indicates that the Association complied with both sections. Thus, citation to neither provision supports plaintiffs' claim.

■ Plaintiffs next argue that "no omissions of material facts should be tolerated" and that section 7.55 of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1991, ch. 32, par. 7.55) should be applicable to all corporations, not for profit corporations, and condominiums. However, plaintiffs' argument ignores the fact that the Association is a not-for-profit corporation whose affairs are governed not by the provisions of the Business Corporation Act of 1983, but rather, by the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1991, ch. 32, par. 101.01 *et seq.*). While the General Not For Profit Corporation Act and the Business Corporation Act have similar provisions with respect to some matters, the proxy provisions in the General Not For Profit Corporation Act and the Business Corporation Act are distinct. Significantly, the General Not For Profit Corporation Act, which was passed after passage of the Business Corporation Act, omits the Business Corporation Act provisions relating to proxy solicitations and disclosures cited by plaintiffs. Thus, it is clear that the legislature, which enacted both statutes, did not intend for the Association to be subject to the Business Corporation Act's proxy solicitation requirements.

We also reject plaintiffs' suggestion that the principles embodied in Federal securities law should be applied to the Association's proxies. Courts are not legislative bodies, and absent relevant statutory authority, we decline to impose burdens on not-for-profit corporations which the legislature deliberately omitted.

■ Plaintiffs next question whether the defendant Meyers, as president of the Board, may rightfully vote in elections on behalf of units which are owned by the Association itself. One of the Association's units is used by the building engineer as his residence and this unit was voted, pursuant to the Association's declaration, by defendant Meyers in the 1990 and 1991 elections. Because the voting of the

Association-owned unit made no difference in the outcome of either election, however, and because there is the strong possibility that such practice may never affect the outcome of subsequent elections, plaintiffs can allege no specific harm to their representational rights. They therefore fail to have standing to raise this claim.

■ Finally, plaintiffs attack the voting by the Association of units pursuant to the Board's proxy resolution. In both 1990 and 1991 defendant Meyers, as president of the Association, sent letters to unit owners which stated:

"If you designate that your proxy is to be voted by me at the Annual Meeting, then I will vote your proxy consistent with the vote of a simple majority of the Board members present at the meeting. This procedure was established through a Board resolution several years ago as a way for the Board members to vote the proxies in the same manner that all other matters are decided by the Board. You may also designate anyone else to vote your proxy."

Proxies distributed with this letter contained the following language:

"I, _____, hereby represent that I am an Owner of Unit No. ____ in Carl Sandburg Village Condominium Association No. 7, and do hereby grant my proxy to _____. If no designation is made, then this proxy shall be deemed to be granted to Thomas R. Meyers, President, or in his absence, Nathan Swift, Vice-President ***."

The proxy resolution adopted by the Board in 1987 states:

"RESOLVED, that the President, or in his absence the Vice-President *** who votes proxies at the Annual Meeting of the Homeowners, be so instructed to vote those proxies in accordance with the wishes of the Board members present at that meeting. The voting by Board members present at the meeting shall be on a non-cumulative basis and the ballots shall be confidential and collected by the President, or in his absence by the Vice-President *** and those ballots counted after the adjournment of the Annual Meeting in the presence of at least 2, but not more than 3, other officers and/or members of the board, and the way the proxies were voted by disclosed as part of the minutes of the succeeding Board meeting."

In support of this procedure, the Association contends that owners may prefer to exercise this voting option if satisfied with the Board's handling of the affairs of the Association and if the unit owner either does not trust an individual with his proxy or believes that the Board is in a better position than the unit owner to evaluate

the slate of candidates. Indeed, at the hearing before the circuit court on November 18, 1991, the court was informed that 33 proxies had been cast in the 1991 election pursuant to the proxy resolution.

Of the five incumbent candidates running for reelection in 1991, all five received the benefit of votes from the president voted pursuant to the proxy resolution. Two incumbents would not have been elected without this support. Plaintiff DeHetre did not receive the support of the Board. Because the plaintiffs have a tangible legal interest in the voting procedures used to elect the Board, because the Association, through the Board, blocked plaintiffs' attempts to revoke the proxy resolution, because this Board practice has had an effect on past elections and because the defendants have indicated that they intend to continue this practice, plaintiffs have standing to raise this claim.

Plaintiffs first point to section 18(a)(17) of the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(17)), which states:

"[T]he board of [directors] may disseminate to unit owners biographical and background information about candidates for election to the board if: (1) no preference is expressed in favor of any candidate; and (2) reasonable efforts to identify all candidates are made and all candidates are given an opportunity to include biographical and background information in the information to be disseminated."

Plaintiffs contend that this provision prohibits the president from voting proxies, pursuant to the proxy resolution, because doing so expresses a Board preference for a particular candidate. However, as the trial court correctly noted, "the purpose of the provision is not to use the money of the organization to advocate any particular candidate to be elected to office." Because the Board's proxies did not advocate any particular candidate, section 18(a)(17) was not violated.

Plaintiffs also note that the Condominium Property Act (Ill. Rev. Stat. 1991, ch. 30, par. 318(a)(1)) and section 5.03 of the Association's declaration restrict proxy designees to "unit owners." They also point out that that there is a distinction between Board "resolutions" and "bylaws" and argue that the Proxy Resolution, in that it is "a permanent and continuing rule which is general in its operation and nature and is to be applied on all future occasions" (8 W. Fletcher, Cyclopedia of Corporations §4167, at 675 (rev. 1992)), is really a bylaw requiring two-thirds owner approval. They argue that because the Board never received two-thirds owner approval, proxies may not be voted pursuant to the proxy resolution.

These arguments, while inventive, are also without merit. Plaintiffs fail to appreciate that a unit owner, by leaving his proxy blank, gives his proxy to the Board's *president*, who is indeed a unit owner. Plaintiffs also fail to appreciate that, even in the absence of the Proxy Resolution, the president of the Association, as president, has the authority to solicit proxies to be voted in any manner so long as he complies with the Condominium Property Act, the General Not For Profit Corporation Act, and the Association's declaration. While such a solicitation could, in theory, rise to the level of fraud or a breach of fiduciary duty, it must be stressed again that plaintiffs have alleged no facts to indicate that such is the case here. Because the Association's practice of allowing the president to solicit proxies has not violated any relevant statutory or common law principle, plaintiffs' claims in this regard must fail.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.