NATURAL ORGANICS, INC., *et al.*, Plaintiffs-Appellants, v. NATIONAL NUTRITIONAL FOODS ASSOCIATION, Defendant-Appellee.

First District (3rd Division)   No. 1—98—0963

Opinion filed December 16, 1998.

Freeman, Freeman & Salzman, P.C., of Chicago, and Bass & Ullman, P.C., of New York, New York, for appellants.

Sidley & Austin, of Chicago (Richard D. Raskin and Amy B. Kelley, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Natural Organics, Inc. (Natural Organics), Gerald Kessler, and Health Food Associates, Inc., d/b/a Akin's Natural Foods Market, appeal from an order of the circuit court granting defendant National Nutritional Foods Association's (NNFA's) motion to dismiss plaintiffs' complaint and denying plaintiffs' motion for summary judgment. On appeal, plaintiffs argue that: (1) the trial court erred in find-

ing that the use of irrevocable proxies by not-for-profit corporations is not unlawful under the General Not For Profit Corporation Act of 1986 (Not-For-Profit Corporation Act) (805 ILCS 105/107.50 (West 1996)); (2) because the use of irrevocable proxies was unlawful, "[t]he voting results should therefore be retabulated without the illegal 'irrevocable' proxies"; and (3) the trial court erred in denying plaintiffs' motion for summary judgment because "there are no actual or conceivable factual disputes" precluding summary judgment. For the reasons set forth below, we affirm.

Plaintiff Natural Organics, a New York corporation with its principal place of business in New York, conducts business in Illinois and other states, sells dietary supplement products, and is a voting member of defendant NNFA. Plaintiff George Kessler is the chief executive officer of Natural Organics. Plaintiff Health Foods Associates, Inc., an Oklahoma corporation with its principal place of business in Oklahoma, conducts business in Oklahoma and other states, sells natural foods and dietary supplement products, and is a voting member of defendant NNFA.

Defendant NNFA is a national trade association and an Illinois not-for-profit corporation. NNFA is an independent retailer and supplier of natural foods and natural food supplements. The voting rights of NNFA are governed under article X, section 4, of the NNFA bylaws, which provides, in pertinent part: "[e]ach regular member shall have one vote." The NNFA bylaws do not contain a section that governs proxy voting. According to article XV of the NNFA bylaws, amendments to the bylaws may be passed by a two-thirds vote of members at an annual meeting.

The 1997 NNFA national convention and trade show took place in Las Vegas, Nevada, on July 13 through July 16, 1997. The annual business meeting of the NNFA was held during the convention on July 15 and 16. Twenty-three amendments to the NNFA bylaws were proposed and noticed for a vote at the meeting. Proposed amendment 21 would have changed the procedure by which supply division and at-large retailer division representatives were elected to the NNFA board of directors. It would have provided for their election at the annual business meeting by a vote of the membership at large, instead of by a vote of their respective division membership at meetings which precede that of the full association. Amendment 21, if approved, would have taken immediate effect and would have required that a new election of the supply division and at-large retailer division representatives to the board of directors be held, under the new procedure specified in the bylaw amendment.

Prior to the annual business meeting, plaintiffs were proponents

advocating the passage of proposed amendment 21. Kessler solicited proxies from NNFA members giving him the right to cast the proxy-givers' votes in favor of amendment 21. The chair of the supply division, Bill Knudsen, and the NNFA representative of Smucker Quality Beverages, Inc., also solicited proxies from members to use in voting for amendments. The "Knudsen/Smucker" proxy solicitation advised NNFA supply members to vote "no" on amendment 21, and on the face of the proxy was the phrase, "This proxy is irrevocable."

After the vote, the accounting firm of Piercy, Bowler, Taylor and Kern validated all of the ballots cast and tabulated the votes for and against all of the proposed bylaw amendments. The accounting firm determined that 93 ballots and 246 valid proxies had been cast for a total of 339 votes in favor of amendment 21. The Kessler proxies accounted for 164 of the proxies cast in favor of the amendment. The accounting firm also determined that 95 ballots and 216 valid proxies were cast for a total of 311 votes against amendment 21. The Knudsen/Smucker proxies accounted for 178 of the proxies cast against amendment 21. As a result, amendment 21 did not receive the required two-thirds votes necessary for passage as required by the NNFA bylaws.

Plaintiffs filed a complaint in the circuit court on September 9, 1997, alleging that: the Knudsen/Smucker proxies stated on their face that they were "irrevocable"; the use of "irrevocable" proxies is unlawful when used by not-for-profit corporations governed by the Not-For-Profit Corporation Act (805 ILCS 105/107.50 (West 1996)); and the use of such proxies, and their validation in the voting conducted at the 1997 NNFA annual meeting, was contrary to public policy and void as a matter of law. Plaintiffs sought a declaratory judgment in their favor, declaring that the Knudsen/Smucker proxies, and all voting results at the NNFA business meeting, were invalid, null, and void. Plaintiffs also sought an order directing the revalidation and retabulation of the voting results without the Knudsen/Smucker proxies.

Defendant filed a motion to dismiss plaintiffs' complaint on October 17, 1997, arguing that: the Not-For-Profit Corporation Act specifically authorizes the use of proxies unless a corporation states otherwise in its articles or bylaws; by comparing the Business Corporation Act of 1983 (Business Corporation Act) (805 ILCS 5/7.50 (West 1996)) to the Not-For-Profit Corporation Act, Illinois law permits irrevocable proxies for not-for-profit corporations; and invalidating the challenged proxies would impermissibly disenfranchise the proxy givers. Defendant therefore maintained that plaintiffs' complaint failed to state a cause of action.

Plaintiffs filed a motion for summary judgment, arguing that: the

Not-For-Profit Corporation Act does not authorize the use of irrevocable proxies, and the Knudsen/Smucker proxies were therefore invalid and should be declared null and void as a matter of law; and Illinois law requires that the 1997 NNFA voting results should be retabulated without the Knudsen/Smucker proxies.

At a hearing on the parties' motions on February 25, 1998, the trial court found that "[t]he [NNFA] election should not be declared void and invalid because irrevocable [was] written on the face of the [Knudsen/Smucker] proxies." The trial court also found no basis in the Not-For-Profit Corporation Act that would support plaintiffs' argument that the use of the irrevocable proxies was unlawful. Accordingly, the court granted defendant's motion to dismiss plaintiffs' complaint with prejudice and denied plaintiffs' motion for summary judgment. This appeal followed.

■ The standard of review applicable to the dismissal of a complaint is *de novo*. *Pryweller v. Cohen*, 282 Ill. App. 3d 899, 907, 668 N.E.2d 1144 (1996). A proper review of the issues presented in the case at bar requires us to apply the rules of statutory construction. "The construction of a statute is an issue of law and our review is therefore *de novo.*" *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61 (1996).

Plaintiffs first contend that the inclusion of the phrase, "[t]his proxy is irrevocable," on the Knudsen/Smucker proxies used at the annual business meeting of the NNFA renders the proxies invalid and the votes of the proxy-givers void. Plaintiffs assert that both the Not-For-Profit Corporation Act and the Business Corporation Act, which allow for proxy voting, superseded the common law, which did not allow for proxy voting. However, plaintiffs maintain that irrevocable proxies remain invalid as to not-for-profit corporations because the Not-For-Profit Corporation Act does not address irrevocable proxies at all and, therefore, the common law, which barred them, remains in effect.

Defendant argues that the Not-For-Profit Corporation Act does not prohibit the use of irrevocable proxies in voting by members of not-for-profit corporations and that, in the absence of an express prohibition, irrevocable proxies are permitted. Defendant further maintains that since the Not-For-Profit Corporation Act omits any reference to irrevocable proxies and was enacted three years after the Business Corporation Act, which addresses irrevocable proxies, the legislature did not intend to limit their use by not-for-profit corporations.

■ Whether the Not-For-Profit Corporation Act allows for "irrevocable" proxies is a case of first impression in Illinois. The rules of

statutory construction require the court to determine and follow the intent of the legislature, using the language of the statute as the most reliable indicator of legislative intent. *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 424, 688 N.E.2d 364 (1997). When unambiguous terms in a statute are not specifically defined, a court should give the words their plain and ordinary meaning. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391-92, 665 N.E.2d 808 (1996). "We must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *Barnett*, 171 Ill. 2d at 389.

Plaintiffs contend that, because there is no explicit or implicit authorization for irrevocable proxies within the language of the statute, the use of irrevocable proxies is not allowed in the not-for-profit corporation context. Plaintiffs' conclusion is based on their comparison of the Business Corporation Act, which was enacted three years prior to the Not-For-Profit Corporation Act, that expressly allows for irrevocable proxies under specified conditions. Plaintiffs maintain that this is a clear indication that the legislature, since it did not limit the use of irrevocable proxies in the Business Corporation Act, did not intend to authorize the use of irrevocable proxies at all in the not-for-profit corporation context under any condition.

The Business Corporation Act, enacted in 1983, provides, in pertinent part:

"(c) An appointment of a proxy is revocable by the shareholder unless the appointment form conspicuously states that it is irrevocable and the appointment is coupled with an interest in the shares or in the corporation generally. By way of example and without limiting the generality of the foregoing, a proxy is coupled with an interest when the proxy appointed is one of the following:

(1) a pledgee;

(2) a person who has purchased or has agreed to purchase the shares;

(3) a creditor of the corporation who has extended it credit under terms requiring the appointment, if the appointment states the purpose for which it was given, the name of the creditor, and the amount of credit extended;

(4) an employee of the corporation whose employment contract requires the appointment, if the appointment states the purpose for which it was given, the name of the employee, and the period of employment; or

(5) a party to a voting agreement created under Section 7.70." 805 ILCS 5/7.50(c)(1) through (c)(5) (West 1996).

The Not-For-Profit Corporation Act, enacted in 1986, which governs proxies, provides in pertinent part:

"A member entitled to vote may vote in person or, unless the articles of incorporation or the bylaws otherwise provide, by proxy executed in writing by the member or by that member's duly authorized attorney-in-fact. No proxy shall be valid after 11 months from the date of its execution, unless otherwise provided in the proxy." 805 ILCS 105/107.50 (West 1996).

■ While the legislature did provide for the use of irrevocable proxies under specified conditions in the Business Corporation Act, we cannot read that provision into the Not-For-Profit Corporation Act. More specifically, as this court stated in *Adams v. Meyers*, 250 Ill. App. 3d 477, 489, 620 N.E.2d 1298 (1993), "[w]hile the General Not For Profit Corporation Act and the Business Corporation Act have similar provisions with respect to some matters, the proxy provisions in the General Not for Profit Corporation Act and the Business Corporation Act are distinct. *** [I]t is clear that the legislature, which enacted both statutes, did not intend for [not-for-profit corporations] to be subject to the Business Corporation Act's proxy solicitation requirements." We therefore reject plaintiffs' argument that a comparison of the Business Corporation Act to the Not-For-Profit Corporation Act is a clear indication that the legislature, since it did not include language regarding the use of irrevocable proxies in the Not-For-Profit Corporation Act, did not intend to authorize the use of irrevocable proxies by members of not-for-profit corporations.

■ We next consider the language of the Not-For-Profit Corporation Act's proxy provision. Section 107.50 provides: "A member entitled to vote may vote in person or *** by proxy executed in writing." 805 ILCS 105/107.50 (West 1996). The Not-For-Profit Corporation Act does not define "proxy" and the term is unambiguous; therefore, we must give the word its plain and ordinary meaning. The word "proxy" is defined as "a document giving such authorization; *specif*: a power of attorney given and signed by a stockholder authorizing a specified person or persons to vote corporate stock." Webster's Third New International Dictionary 1828 (1993). Section 107.50 contains no language distinguishing between revocable and irrevocable proxies, nor does it place any limitations on proxies. Therefore, we conclude that the legislature's intent was to allow the use of both revocable and irrevocable proxies by members of not-for-profit corporations. If the legislature had intended to limit the use of irrevocable proxies by members of not-for-profit corporations, it could have simply stated so in the statute, especially in light of the fact that it had specifically included language as to revocable and irrevocable proxies three years earlier in enacting the Business Corporation Act. We cannot, under the guise of statutory construction, impose limitations that are

inconsistent with the plain meaning of the statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996).

We briefly note that plaintiffs' reliance on *Adams*, for the proposition that since the legislature acted by limiting the use of irrevocable proxies by business corporations and did not act in the same respect as to their use by not-for-profit corporations, the legislature did not intend to authorize the use of irrevocable proxies at all by members of not-for-profit corporations, is misplaced. *Adams* involved a not-for-profit corporation that counted proxy votes that had omitted disclosure language from the proxy solicitations. The *Adams* court rejected the plaintiffs' argument that since the Business Corporation Act required a disclosure statement, a similar requirement should apply to the use of proxies by not-for-profit corporations. Lastly, as defendant here points out, had the *Adams* court followed the interpretation which plaintiffs now urge, the *Adams* court would have ruled that the proxies were invalid because the Not-For-Profit Corporation Act did not expressly authorize the nondisclosure procedures, which is precisely the opposite conclusion reached by the *Adams* court.

Based upon a construction of the Not-For-Profit Corporation Act, we conclude that the use of both revocable and irrevocable proxies is allowed by not-for-profit corporation members. Accordingly, we hold that the trial court properly dismissed plaintiffs' complaint for failure to state a claim upon which relief could be granted. In light of our holding, we need not address plaintiffs' remaining arguments that the voting results should be retabulated and that the trial court erred in denying their motion for summary judgment. For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

CERDA and LEAVITT,[1] JJ., concur.

---

[1]Justice Leavitt participated in the disposition of this case before leaving the appellate court.