**Crerar Clinch Coal Company, Appellant, v. Board of Education of City of Chicago, Appellee.**

**Gen. No. 47,011.**

First District, First Division.

April 1, 1957.

Released for publication April 24, 1957.

William H. Van Oosterhout, of Chicago, for appellant; John M. O'Connor, Jr. and James O. Wood, Jr., and Robert H. Klugman, all of Chicago, of counsel.

Frank R. Schneberger, of Chicago, for appellee; Frank S. Righeimer, James W. Coffey, and John T. Mehigan, all of Chicago, of counsel.

JUDGE FRIEND delivered the opinion of the court.

Crerar Clinch Coal Company, a corporation, brought an action under section 57½ of the Civil Practice Act (Ill. Rev. Stat. 1953, ch. 110, par. 181.1) against the Board of Education of the City of Chicago for a declaration that defendant was obligated, under its written contracts of June 24, 1953 with plaintiff, to pay for coal at the prices fixed therein, and that a subsequent amendment to the Sales Tax or Retailers' Occupation Tax Act (Ill. Rev. Stat. 1953, ch. 120, par. 441, sec. 2)

did not give defendant the right to deduct two per cent from the contract price. Plaintiff further sought to compel payment to it of the sum of $5,130.36, representing the aggregate sales tax after August 1, 1953, the effective date of the legislative amendment, which the board had refused to pay. Defendant answered, admitting substantially all the material allegations of the complaint but claiming that the amendment of section 2 of the Retailers' Occupation Tax Act, which exempted from that tax the gross receipts of sales to governmental bodies after August 1, 1953, its effective date, gave defendant the right to deduct two per cent from the contract price. Plaintiff's motion for judgment on the pleadings was denied, and it thereupon elected to stand on the pleadings. Defendant's motion for summary judgment was granted. The court declared that even though there was no apparent ambiguity in the contract, defendant had rightfully deducted from the contract price an amount equal to the two per cent Retailers' Occupation Tax because the payment of such amount would be an unjust enrichment at the expense of the taxpayers. Plaintiff seeks a reversal of the adverse judgment, with a finding that defendant wrongfully withheld such amount and with an order that defendant pay the balance owing.

No evidence was adduced upon the hearings. From the facts established by the pleadings it appears that on June 24, 1953 plaintiff entered into written contracts with the board for the sale and delivery of coal for use in the public schools of Chicago for the period commencing August 1, 1953 and ending May 31, 1954. The contracts particularly specified the only circumstances under which the price for coal could be adjusted, either up or down; a change in the Retailers' Occupation Tax Act was not mentioned. Subsequent to the execution of the contracts the Illinois Legislature enacted an amendment to section 2 of the Retailers' Occupation

210

Tax Act, which by its terms became effective August 1, 1953, excluding from said tax the proceeds of sales to all public bodies, including the Board of Education. Shortly after the amendment became effective the board notified plaintiff that it would deduct from the price of coal delivered after August 1, 1953 the computed amount of the sales tax, and from August 1953 through April 1954 it withheld, in paying plaintiff's invoices, a total of $5,130.36. During this period the parties had agreed that, by accepting the reduced amount in payment of the invoices, plaintiff neither waived nor prejudiced its claim for the full amount.

■ This suit was brought primarily to construe the written contracts between the parties for the purchase of coal. The composite price to be paid per ton was stated in the contracts; the amount of the Retailers' Occupation Tax was not specified. Both the specifications and the contracts were prepared by defendant, which puts it into the position of defending the instruments, so to speak, under the rule holding that "an instrument is to be construed most strongly against its author." Cemetery Assn. v. Village of Calumet Park, 398 Ill. 324. If there were any ambiguity in the contracts—and here there is not—they would be construed more strongly against their author. Dixon v. Montgomery Ward & Co., Inc., 351 Ill. App. 75.

Authorities cited by plaintiff uniformly hold that where a contract provides a specific price for the article sold, the purchaser cannot claim a reduction in price because of the elimination or reduction of a tax, such tax being absorbed or buried in the contract price. In Cupples Co. v. Mooney (St. Louis Court of Appeals, Mo.), 25 S.W.2d 125, the seller sued for the balance due under a contract. The purchaser sought to reduce the price by the amount of the Federal excise tax which had been repealed subsequent to the excution of the contract. In denying defendant's claim for a reduction

in the contract price, the court said: "The contract provided for the payment of a definite price for each tube, and the fact that the agreed price happened to include a tax, and that the tax law was subsequently repealed, did not give defendant the right to claim a reduction in the contract price, any more than would have been true if the cost of the raw materials going into the manufacture of the tubes had been reduced." The principle enunciated in the Missouri case was followed by Federal and state courts which had before them the Agricultural Adjustment Act passed in 1933 and declared invalid in 1936. In all these cases it was admitted that the miller or seller had passed on the burden of the tax by including it in the contract price. Nevertheless the courts uniformly held that where the contract price was a composite one the purchaser was not entitled, on past deliveries, to a refund of the tax amount.

In Noll Baking & Ice Cream Co. v. Sparks Milling Co., 304 Ill. App. 624, the purchasers sought to recover back from the seller the processing taxes paid by the buyers to the seller while the Agricultural Adjustment Act was in effect. The contract provided for a price revision if the tax were changed but made no provision for a revision if the tax were invalidated. In affirming the trial court's dismissal, the Appellate Court observed that "while the question of the recovery back of processing taxes has apparently never been passed upon by a court of last resort in Illinois, in the final analysis, this is but an old principle dressed in a new garb, the fundamentals are the same. . . . We have carefully examined all the cases cited by counsel for plaintiffs, and find no authority in any of them for holding that plaintiffs would be entitled to recover back the amount of the processing tax, voluntarily paid, with a full knowledge of the facts." In the Noll case plaintiffs relied primarily on a decision of the New

York Court of Appeals written by Judge Cardozo, Wayne County Produce Co. v. Duffy-Mott Co., 244 N. Y. 351, 155 N. E. 669, but the case distinguishes itself, for Judge Cardozo says: "This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller . . ." Following the reasoning of the Wayne County Produce Co. case, the Illinois Appellate Court stated: "The conclusion is irresistible, in the instant case, that the amount of the alleged tax was included and absorbed in the price named in the contract, and paid by the buyer, including, not only the tax, but the cost of the raw product, the cost of milling and processing the flour, the shipping rate, cost of the sack or barrel and the profit of the seller, a composite price where one item could not be set apart from any of the other component elements." After a discussion of Johnson v. Igleheart Bros., Inc., 95 F.2d 4, strikingly similar on the facts to the Noll case, the Appellate Court said: "It is not the province of the courts to add to contracts of parties, elements which they did not themselves provide, nor to protect one of the contracting parties against a subsequent contingency, which would have been advantageous to him, had he but foreseen it. The circuit court of appeals . . . says, in the Igleheart case, 'In the instant case the amount of the alleged tax was included and absorbed in the price named in the contract and paid by the buyer, and we think it was a price to be paid at all events.'" The Appellate Court concluded that it felt "constrained to hold under the ruling in the Igleheart case, supra and other cases cited in this opinion, that the consolidated complaint did not state a cause of action . . ."

The Igleheart case involved an interpretation of contracts in which the Agricultural Adjustment Act fig-

213

ured, with contractual provisions for an increase or a decrease in the price of flour dependent upon corresponding changes in the tax imposed under the Act. The court said: "The parties to this contract dealt with the subject of taxes. In fact, they covered specifically the subject of process taxes. They provided against either an increase or a decrease in said process tax. . . . It is urged upon us . . . that notwithstanding the want of express language to cover the situation presented, the court should construe the contracts as containing an implied promise to refund to the plaintiff that part of the purchase price which went to make up the processing tax. In other words, we are asked, by construction, to afford the plaintiff protection against a contingency other than that which the parties themselves provided. . . . It seems clear to us that the law is well settled that where parties expressly contract, under what circumstances an obligation may arise with reference to a certain subject-matter, where the same is entered into without fraud or mutual mistake, it excludes the possibility of an implied covenant of a contradictory or different nature. . . . There is no claim of fraud or mutual mistake; the parties were dealing at arms' length, and so far as is shown, there was no effort or intention on the part of either to prevent the other from incorporating any provision necessary for the protection of the contracting parties. If the parties had desired or intended to provide for the contingency here presented, they could and, no doubt, would have done so. Generalia specialibus non derogant." The court set out the definition of the word "price" as given in Lash's Products Co. v. United States, 278 U. S. 175: " 'The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price' "; and it concluded "that plaintiff is not entitled to recover under the contracts sued upon

214

and we might add, based upon the facts disclosed, that he is without remedy either in law or equity." The Igleheart case was a decision of the Court of Appeals for this circuit; certiorari was denied by the Supreme Court (304 U. S. 585), and rehearing was denied (305 U. S. 670).

In Consolidated Flour Mills v. Ph. Orth Co., 114 F.2d 898, 132 A.L.R. 697, an action brought by the seller, the Circuit Court of Appeals for this circuit again considered substantially the same question. Contracts between the milling company and the distributor of flour for sale of flour to the distributor declared that the purchase price to be paid by the distributor reflected the amount of the processing tax paid by the company and provided against the contingency of an increase or a decrease in the processing tax. The amount of the processing tax was not specified, although it could be quite accurately computed. The court there held that the contracts could not be construed as constituting agreements by the company to refund to or to reimburse the distributor in the event that the tax was declared unconstitutional. The court said: "Moreover this is a case where only one price, the price paid for the flour, was stated. The contracts and invoices reveal that the defendant did not pay two separate funds to the plaintiff, namely, a fund for the flour and a fund for the tax. . . . There is evidence that the price reflected the tax but this is not evidence that the buyer paid a separate fund for the flour and a separate fund for the tax. 'The amount added because of the tax is paid to get the goods and for nothing else.' Lash's Products Co. v. United States, 278 U. S. 175, . . . 'Perhaps the price is larger because of the tax but . . . no part of the price paid can be identified as money paid only for the tax.' Continental Baking Co. v. Suckow Milling Co., 7 Cir., 101 F.2d 337, 339. . . . In construing these flour contracts—contracts where only

215

one price (the price paid for the flour) was stated—the courts have not held that such contracts were agreements to refund any part of the purchase price in the event that processing tax was invalidated. It follows that evidence that the bakers bore the incidence of tax, that the defendant promised its customers the benefit of a refund by the plaintiff and that the defendant had contracts with its customers which were similar or dissimilar to the contracts in issue here, is of no avail."

Golding Bros. Co. v. Dumaine, 93 F.2d 162, is to the same effect. That case involved an attempt by the purchasers to recover, under contracts with the seller, the amount of the processing tax included in the purchase price after the tax had been held unconstitutional and had been refunded to the seller. In denying relief, the court said: "From the foregoing statement of facts it appears that the sale contracts in each case provided that the appellants, the purchasers, should pay for the goods a stated price per yard, not a stated price per yard plus the amount of the tax payable thereon; that, in the contracts, so far as concerned delivered portions of the goods, no provision was made for any decrease in price, but that, as to undelivered portions, if their cost was increased or decreased, due to governmental action under the statutes named and affecting the selling cost, the prices for such deliveries were to be modified to the extent that they were affected by such governmental action or legislation. It seems to be well settled that, where a sales contract provides that the purchaser is to pay a stated price and that alone, the purchaser cannot recover from the seller the amount of the tax, if the tax is later done away with by a repeal of the statute or by its being declared unconstitutional, or, if the tax is simply reduced, recover the amount of the reduction, even though the tax had not been paid by the vendor, or, if paid, refunded to him. [Citing numerous decisions.]"

216

 Defendant here argues that even though the contracts state a composite price, nevertheless, because plaintiff elected to stand on the pleadings without replying to defendant's answer and expressly denying its conclusions, plaintiff thereby admitted that "the price plaintiff was charging for coal included the sales tax which plaintiff was passing on to the defendant;" but inasmuch as the contract was made a part of the complaint and contained no reference to the tax, defendant's contention that the tax was a part of the price was nothing more than its interpretation of the contract, and therefore a legal conclusion as distinguished from a well-pleaded fact. Legal conclusions pleaded in an answer are never admitted by failure to reply thereto. In re Estate of Frayser, 401 Ill. 364; Reinhardt v. Security Ins. Co., 312 Ill. App. 1. This is particularly true where the facts are contained in an exhibit attached to the complaint. Bunker Hill Country Club v. McElhatton, 282 Ill. App. 221. See also Marcus v. S. S. Kresge Co., 283 Ill. App. 556, where the complaint was based upon an alleged contract of sale which, as an exhibit, was made a part of the complaint by reference. The court held that the contract controlled the allegations of the bill, citing numerous cases.

██ In his oral opinion at the conclusion of the hearing in the instant case, the trial judge, to whom briefs had been submitted, recognized that the authorities relied on by plaintiff sustained its position, namely, that because the contract fixed a composite price rather than a separate undertaking to pay a tax in addition to the price named, plaintiff would be entitled to retain or collect the tax money. "That," he conceded, "apparently is the law as laid down in virtually all the cases cited by the Plaintiff," but he held that "to allow the plaintiff to recover for what the legislature intended to be a benefit to the taxpayers would be an unjust enrichment at the expense of the taxpayers." This contention

was rejected in Golding Bros. Co. v. Dumaine, as indicated in the quotation from that decision earlier in this opinion.

There is no merit to defendant's contention that section 6 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1953, ch. 120, par. 445), prescribing the conditions under which a retailer can recover a tax voluntarily paid through mistake or error, is applicable to this proceeding. The conditions under which the legislature allows such refund are not applicable to a suit involving a contract price under a clear and unambiguous agreement.

Lastly, it is urged that because plaintiff's prayer for relief asked not only for a declaration of plaintiff's rights under the contracts but also for a proper accounting between plaintiff and defendant and payment of the balance owing plaintiff under the contracts, plaintiff's action becomes a suit for an accounting or an equitable proceeding requiring the interposition of a court of equity and the application of equitable principles, particularly the doctrine of unjust enrichment. Burgard v. Mascoutah Lumber Co., 6 Ill.App.2d 210, Jones v. Hodges, 2 Ill.App.2d 509, and section 57½ (paragraph 181.1) of chapter 110 of the Illinois Revised Statutes 1953, all hold that construction of a contract is a proper type of action under the Declaratory Judgments Act, that such an action is statutory and *sui generis,* and that the action retains its nature even though the plaintiff requests, and the court grants, an accounting, money damages or other incidental relief.

For the reasons indicated, the judgment order of the Circuit Court is reversed, and the cause remanded with directions that an order be entered finding the issues in favor of plaintiff and declaring defendant to have wrongfully deducted $5,130.36 from the contract price,

and that judgment be entered in favor of plaintiff for that amount.

Judgment order reversed, and the cause remanded with directions.

NIEMEYER, P. J. and BURKE, J., concur.