THE FIRST NATIONAL BANK OF LINCOLNWOOD, Plaintiff-Appellee, *v.* BURTON A. GLENN *et al.*, Defendants-Appellants.

(No. 52889;

First District—April 22, 1971.

Louis Elovitz, Edward M. Genson, and Milton A. Tornheim, all of Chicago, for appellants.

Jerome Marvin Kaplan and Martin S. Gerber, both of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

A replevin action was instituted by the First National Bank of Lincolnwood to obtain possession of thirteen school buses held by the defendant Robert Stoberl, the owner of a gasoline service station. The bank had a chattel mortgage on the vehicles arising out of a loan it had made to the owner of the vehicles, Burton Glenn, the proprietor of the Seminole Bus Company. Stoberl denied unlawful possession and asserted that he had a lien for storage which was superior to the bank's. He counterclaimed for damages for storing the buses on his premises. The trial court ruled in favor of the bank on both the complaint and the counterclaim.

In April 1966 Glenn and Stoberl entered into an oral agreement which permitted Glenn to park his buses at the service station, In return, Glenn promised to purchase all the gas used by the buses and all the repairs they required from Stoberl. Both parties complied with the terms of the agreement until the beginning of October 1966, at which time Glenn ceased operating his business because of serious illness. Stoberl learned that the bank held a mortgage on the buses. At the trial he testified that he telephoned the bank and made a demand for storage payments if the buses were to remain on his premises. He said he was told not to worry and was given assurances that the bank would take care of everything.

Leonard Brody, a vice-president of the bank and the bank's sole witness at the trial, testified that the bank did not receive the October and November mortgage installments due from Glenn, and early in December learned that he was ill and that the vehicles were stored at Stoberl's service station. Brody and another official of the bank visited the station. Stoberl informed them that he needed the space occupied by the buses and wished to have them removed. On December 23, 1966, the bank wrote a letter asking him to prepare the vehicles for winter and saying

that it would like to work out an arrangement "wherein we will guarantee payment of reasonable storage charges from this point on." Stoberl winterized the buses and the bank paid him $200.00.

During the succeeding months, the parties conducted discussions concerning a possible agreement for the storage charges. Stoberl demanded $7.50 a day for each bus but later reduced this to $4.50 a day. On March 9, 1967, he served a five-day notice for unpaid rent and followed this up with an eviction action in the Circuit Court. However, he dismissed this action and on March 21, 1967, his attorney received a letter from the bank saying that it would be willing to pay $200.00 a month and would be willing to negotiate a settlement for past due rent. No definite agreement was reached and, in April, the bank filed its complaint for possession.

Both in his pleadings and in his brief filed in this court, Stoberl claimed to have a lien for storage of the buses. However, the lien was not recorded as required by Ill. Rev. Stat. 1965, ch. 82, par. 41, and this and related issues have been waived.

The remaining issue concerns the judgment on the counterclaim. Stoberl contends that the evidence was sufficient to establish that the dealings between him and the bank constituted a contract implied in law under which the bank was bound to pay reasonable storage charges for the buses parked on his premises.

■■ An implied contract is an obligation created by law independent of an agreement of the parties. It arises out of the acts and conduct of the parties—out of circumstances from which the intent to contract can be inferred. (*Highway Commissioners v. Bloomington* (1911), 253 Ill. 164, 97 N.E. 280.) In *Highway* the court gave the following example of an implied contract:

"[W]here one person, in the absence of any express agreement, renders valuable services to another which are knowingly accepted by such other, the law will imply a promise to pay a fair and reasonable compensation for such services."

■■ A contract implied in law is equitable in its nature and is one which reason and justice dictate. It does not arise from an intent to contract or a promise to pay. It exists where there is a plain duty and a consideration. The consideration may be a parting with something by the party seeking to enforce the contract; the promise is presumed so that there will not be a failure of justice. Its essential element is the receipt of a benefit by one party which would be inequitable for that party to retain. It is predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. *In re Breault's Estate* (1965), 63 Ill.App.2d 246, 211 N.E.2d 424; *City of Chicago v.*

*Pittsburg C.C.&St. L.R.R.Co.* (1909), 146 Ill.App.403; *U.S. v. O. Frank Heinz Construction Co.* (1969), 300 F.Supp. 396 S.D. Ill. N.D.

Such a contract was found to exist in *Shaw v. Blessman* (1966), 67 Ill.App.2d 242, 213 N.E.2d 784. There, the plaintiff, without any express agreement, permitted the defendants to use her trailer for storage purposes. The defendants accepted the benefits of the trailer under such conditions that its use could not have been presumed to be gratuitous. The court determined that out of such acceptance and use there arose a promise implied in law that the defendants would make reasonable rental payments.

■■ In the present case there was no express agreement between Stoberl and the bank, but the evidence discloses that the bank recognized that some compensation was due for storage. Although Brody testified that the bank felt no obligation to pay storage charges, and although a promise to settle is not necessarily a promise to pay (*Saul v. Busenbark* (1903), 106 Ill.App. 106), it must have been obvious to officials of the bank either from Stoberl's telephone call in October 1963 or when they called upon him in December, that he expected to be compensated monetarily for keeping the vehicles at his station. While there was no meeting of the minds thereafter as to the amount, the failure to agree on a specific sum cannot relieve the bank of the obligation to pay Stoberl for the use of his premises. The law, therefore, will imply a contract so that he may receive reasonable rental.

It may be argued that inasmuch as Glenn did not pay a specific amount for parking the buses, the bank should not be obliged to do so. However, Stoberl was entitled to rely upon the profits he derived from the continuous sale of gasoline, oil and repair work as rent. From the time the bank asserted authority over the buses, Stoberl received only $200.00 —and this for preparing them against cold weather damages. This amount cannot be considered as payment in full for the privilege of using his property for several months.

The proper measure of damages must be determined in the trial court. Stoberl presented testimony on this issue but the court, in denying his counterclaim as a matter of law, did not reach the issue. The case will be remanded so that the court may determine the rental period for which the bank is responsible and the reasonable compensation due Stoberl for storage of the buses during this period.

Reversed and remanded with directions.

McNAMARA, P. J., and McGLOON, J., concur.