LINDA GREENE PELESCHAK, on Behalf of Herself and All Other Persons Similarly Situated, Plaintiff-Appellee, v. VEREX ASSURANCE, INC., Defendant-Appellant.

First District (6th Division)   Nos. 1—93—3858, 1—94—0071 cons.

Opinion filed May 19, 1995.—Rehearing denied June 23, 1995.

Reuben L. Hedlund, Michael Rachlis, and Kevin B. Duff, all of Hedlund, Hanley & John, of Chicago, for appellant.

Larry D. Drury, of Larry D. Drury, Ltd., of Chicago, and Sheldon Schwartz, of Buffalo Grove, for appellee.

Martha A. Churchill, of Mid-America Legal Foundation, of Chicago, for *amicus curiae.*

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Linda Greene Peleschak, filed this class action lawsuit against defendant, Verex Assurance, Inc., a home mortgage guaranty insurer, seeking recovery of unearned premiums paid to Verex by its customers, home mortgage lenders, for the cost of mortgage guaranty insurance, but not returned to the lenders in cases where the amount of the unearned premium was less than $25 at the time the insurance certificate on the particular mortgage loan was cancelled. The trial court allowed plaintiff's motion for class certification and later granted her motion for summary judgment on all seven counts of her amended complaint.

On appeal, Verex contends that the trial court erred in: (1) granting plaintiff's motion for class certification; (2) granting her motion for summary judgment on all seven counts of her amended complaint and ordering Verex to refund unearned premiums to every member of the class; (3) requiring Verex to bear the cost of notifying members of the class of the pendency of the lawsuit; and (4) ordering

Verex to devise a method of identifying members of the class and to incur the cost of doing so.

The relevant facts are as follows. Verex is a Wisconsin-based insurance corporation that contracts exclusively with home mortgage lenders to issue mortgage guaranty insurance. This insurance protects lenders against losses due to default on home mortgage loans that the lenders have made to their borrowers; it confers no benefit at all to the borrower. The lenders pay premiums directly to Verex in exchange for the insurance.

Once Verex has decided that a mortgage lender is qualified to receive coverage, it issues a master policy to the lender defining the contractual terms of their relationship. Thereafter, Verex reviews requests from the lender to insure particular loans made by the lender. If Verex agrees to insure a loan for the lender, it issues a certificate of insurance on that loan, which becomes effective when the lender pays Verex the initial premium. Verex accepts premiums only from master policyholders.

The premium which Verex charges the lender is paid by the lender on an annual installment basis in advance. The initial premium is paid shortly after the loan closing, and an annual renewal premium is paid by the lender to Verex each year after that until coverage is cancelled. The lender does not inform Verex whether it is reimbursed by a particular borrower for the cost of the mortgage insurance. The record reveals that not all lenders pass on the cost of mortgage insurance to their borrowers. Verex does not undertake to inform the borrower of the terms of its relationship with the lender.

When a borrower defaults on a mortgage loan insured by Verex, the lender submits a claim to Verex on a form authorized by Verex after it has foreclosed on the property and obtained title to it. Verex then either pays the full amount of the lender's loss on the defaulted mortgage and takes title to the property or pays the lender a percentage of the loss and waives any further claim to the property. Payments by Verex are made solely to discharge an obligation to its lender-insured and are not intended for the benefit of any other person or entity, including the borrower.

When a lender-insured cancels coverage on a loan during a period for which it has already paid for the coverage, Verex refunds to the lender the portion of the paid premium covering the months for which insurance will no longer be needed. This amount is known as the unearned premium. The typical situation in which a lender cancels the insurance is where the borrower has sold the property and repaid the mortgage loan.

In 1983, Verex began a practice of not refunding unearned

premiums to lenders where the amount of the refund due was less than $25. Verex also did not collect underpayments of premiums from lenders where the amount of the underpayment due Verex was below $25. Verex instituted this policy at the request of several of its lender-insureds, which had determined that the cost of processing such a small refund exceeded the amount of the refund itself. Verex filed with various State insurance departments, including the Illinois Department of Insurance, its plan to refrain from billing or crediting the lender-insureds whenever the amount involved was less than $25. Verex engages in this practice in 36 States pursuant to either explicit approval from a State's department of insurance or informational filings, as in Illinois. Notwithstanding this practice, the record reveals that Verex regularly honored requests by its lender-insureds to issue refund checks despite the fact that the amount was less than $25.

In 1984, plaintiff and her then-husband, Kevin C. Greene, purchased a home and secured a mortgage loan for the property from Arlington Heights Federal Savings and Loan Association (Arlington Federal) located in Arlington Heights, Illinois. The Greenes were informed that Arlington Federal would purchase mortgage guaranty insurance to protect its interests and would pass on the costs of that insurance to them. The Greenes signed Arlington Federal's statement of estimated settlement charges, which included approximately $17 per month for the mortgage guaranty insurance premium.

Sometime in 1985, Verex received an application from Arlington Federal to insure it on the Greenes' mortgage loan. Verex agreed to insure the bank on the loan and issued a certificate of insurance in July of that year. Arlington Federal paid Verex the initial premium of $583 in exchange for coverage. At the closing, the Greenes learned for the first time that Arlington Federal had selected Verex to be the mortgage guaranty insurer on their loan. Plaintiff had never heard of Verex prior to that time and had no contact with the company until after she initiated this action. The Greenes signed the mortgage contract agreeing to pay Arlington Federal all amounts it would be required to pay to Verex for insurance coverage. Plaintiff never issued any checks to Verex.

In April 1986, the Greenes' mortgage loan, Verex's master policy, and the certificate of insurance on their loan were transferred and assigned to Talman Home Mortgage Corporation (Talman). Thereafter, Talman paid Verex annual renewal premiums in exchange for continued insurance coverage on the Greenes' loan. (Talman was originally named as a defendant in this action but was subsequently dismissed without prejudice. However, pursuant to the

trial court's definition and certification of the class, Talman is now a member of the class represented by plaintiff.)

On July 3, 1989, Talman informed Verex on a Verex form that the Greenes' loan had been paid in full and cancelled the insurance effective July 31, 1989. Verex responded to this request on August 9, 1989, by informing Talman that no refund of unearned premiums would be made since the amount of the refund was less than $25. Talman never requested that Verex make a refund under the certificate of insurance covering the Greenes' loan.

Plaintiff never sought a refund from Talman or Verex but in 1991 initiated this action against Verex as representative of a class of borrowers and lenders. Plaintiff's specific claims arise out of the practice of Verex, described above, of not refunding to its lender-insureds unearned premiums under $25. Plaintiff claims that since she was charged by the lender for its cost of mortgage guaranty insurance, she is entitled to a refund of unearned premiums from Verex. In her first amended complaint, plaintiff sought relief under the following theories: (1) breach of contract implied in law; (2) breach of rights as a third-party beneficiary; (3) violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121$^1$/$_2$, par. 262) and sections 2(2) and 2(12) of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1987, ch. 121$^1$/$_2$, par. 312); (4) common law fraud; (5) negligent misrepresentation; (6) breach of the implied duty of fair dealing; and (7) declaratory judgment.

Verex filed a motion for summary judgment. The trial judge stated that there were genuine issues of material fact that would preclude summary judgment. He denied Verex's motion for summary judgment.

On May 7, 1993, the trial court granted plaintiff's motion for class certification and accepted the following class definition submitted by plaintiff:

> "All persons and entities throughout the United States who paid mortgage insurance premiums for mortgage insurance issued, provided and serviced by Verex and were not refunded their unearned mortgage insurance premiums under $25 for said insurance upon its cancellation from 1981 to the present."

Plaintiff later moved for summary judgment and requested the trial court to require Verex at its own expense to notify the class by mail and by publication of the pendency of the action. On October 29, 1993, the trial court entered an order granting plaintiff's motion for summary judgment on all seven counts of her first amended complaint. The court directed Verex to refund to plaintiff and the

other members of the class all unearned mortgage insurance premiums under $25, with interest thereon, from 1981 to the present. The court also granted plaintiff's motion requesting Verex to pay all expenses associated with notifying the class of the pending action. Additionally, the court granted plaintiff leave to file a motion for attorney fees and costs pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) and denied Verex's motion to reconsider the court's May 7, 1993, order certifying the class.

On December 21, 1993, the trial court denied plaintiff's Rule 137 motion, and she filed a motion to reconsider that ruling. On December 30, 1993, the court granted plaintiff's motion for reconsideration but ultimately denied her request for monetary sanctions. The court did, however, order Verex to devise a way to identify members of the class and to incur the cost of doing so.

On appeal, Verex first contends that the trial court erred in granting summary judgment in favor of plaintiff on all seven counts of her first amended complaint. Verex argues that the undisputed material facts fail to support a basis of recovery under any of plaintiff's theories and that thus it is entitled to judgment. Alternatively, it argues that issues of material fact exist precluding the entry of summary judgment for plaintiff.

Although the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should therefore be used only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) In considering a motion for summary judgment, the court must consider the pleadings, depositions, affidavits, admissions, and exhibits on file and has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmovant. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736.) If the court finds that the record contains any genuine issues of material fact, the motion for summary judgment must be denied. (*Hoover*, 155 Ill. 2d at 411, 615 N.E.2d at 740.) An order granting summary judgment is subject to *de novo* review on appeal. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204; *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.

Verex initially argues that the trial court erred in granting summary judgment for plaintiff on count I of her amended complaint alleging breach of contract implied in law. Plaintiff counters that summary judgment was proper because Verex was unjustly enriched in "refusing" to refund to her the unearned premium due at the time her loan was paid off.

In *First National Bank v. Glenn* (1971), 132 Ill. App. 2d 322, 270 N.E.2d 493, this court described the essence of an implied contract in law as follows:

"An implied contract is an obligation created by law independent of an agreement of the parties. It arises out of the acts and conduct of the parties—out of circumstances from which the intent to contract can be inferred. ***

A contract implied in law is equitable in its nature and is one which reason and justice dictate. It does not arise from an intent to contract or a promise to pay. It exists where there is a plain duty and a consideration. The consideration may be a parting with something by the party seeking to enforce the contract; the promise is presumed so that there will not be a failure of justice. Its essential element is the receipt of a benefit by one party which would be inequitable for that party to retain. It is predicated on the fundamental principle that no one should unjustly enrich himself at another's expense." *Glenn*, 132 Ill. App. 2d at 324, 270 N.E.2d at 495.

See also *Zadrozny v. City Colleges* (1991), 220 Ill. App. 3d 290, 581 N.E.2d 44.

Plaintiff does not dispute the fact that no express contract of any kind existed between her and Verex. Indeed, she acknowledges that the only express contract to which she was a party in which mention was ever made of mortgage guaranty insurance was the mortgage contract issued by the lender, Arlington Federal (which was later assigned to Talman). In that contract, plaintiff agreed to pay to the lender all amounts the lender was required to pay Verex for mortgage guaranty insurance. The contract specified that "[u]pon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender." These "Funds" included monies paid by plaintiff to the lender for the lender's mortgage guaranty insurance premiums.

It is well settled in Illinois that no claim on a contract implied in law can be asserted if an express contract exists between the parties and concerns the same subject matter. (*Zadrozny*, 220 Ill. App. 3d at 295, 581 N.E.2d at 48.) It could well be concluded that the existence of the express contract between plaintiff and Arlington Federal/Talman precludes a claim by plaintiff against Verex on the basis of contract implied in law, since the "Funds" referred to in the contract presumably include unearned premiums refunded to the lender by Verex upon cancellation of coverage. Indeed, the record is clear that Verex does refund unearned premiums over $25 to the lender, which, at least in Talman's case, are in turn given back to the borrower.

That such did not occur in plaintiff's case can arguably be said to be a breach of contract issue between plaintiff and the lender.

■ However, even were we to conclude that no express contract covering the subject matter of unearned mortgage insurance premiums existed, we nevertheless find that plaintiff's contract implied in law theory fails since the undisputed material facts do not show that Verex owed a duty to plaintiff to refund to her the unearned premiums or that it was unjustly enriched. The record indicates that Verex's policy of declining to refund unearned premiums under $25 was the intended result of a contractual course of dealing between it and its customer—the lender. It is clear from the informational filing Verex sent to the Illinois Department of Insurance that Verex instituted this practice at the request of lenders with which it did business, the lenders finding that the administrative costs involved in processing such a small refund exceeded the value of the refund itself. Verex stated in the informational filing that it would honor any lender's request to keep the current practice of receiving all refunds, despite the amount. The record is devoid of any indication that the original lender, Arlington Federal, ever disputed the practice, and while an affidavit filed by Talman states that it never agreed to this practice, the record reveals that in over 500 instances Talman waived refunds of unearned premiums from Verex when the refund due was under $25. Indeed, plaintiff herself admitted, in her response to Verex's motion to dismiss, that Talman "agreed and allowed Verex to withhold and retain the unearned premiums in an amount under $25.00." In our view, any duty owed to plaintiff was the lender's, not Verex's, for it was the lender that agreed to allow Verex to retain monies which had originally been paid out by the borrower but for which no product or service was given in exchange.

Moreover, the evidence submitted by Verex indicates that it did not know whether Talman required plaintiff to pay for the cost of the mortgage insurance, and plaintiff has apparently offered no evidence contrary to this. Verex filed several affidavits showing that in numerous cases, the borrower does not, in fact, reimburse the lender for the cost of mortgage insurance. It was well within Verex's right to believe, therefore, that the unearned premium which Talman allowed Verex to retain in this case came from Talman's own pocket, not plaintiff's. In short, we do not find that there was any "plain duty" (*Glenn*, 132 Ill. App. 2d at 324, 270 N.E.2d at 495) on the part of Verex to direct the unearned premium refund to a person with whom it had no contractual relationship. The record here fails to support plaintiff's claim of breach of contract implied in law against

Verex. We thus enter summary judgment on this count in favor of Verex.

In view of our holding in Verex's favor on plaintiff's contract implied in law claim, plaintiff's additional claim that Verex breached the implied duty of fair dealing and her claim seeking a declaratory judgment fail. It is clear from her amended complaint that both claims are tied to the success of her contract implied in law claim, and since we have determined the latter to be without merit, we necessarily find the other two claims to be without merit as well.

Verex also contends that the trial court erred in granting judgment for plaintiff on her third-party beneficiary claim. We agree. In *People ex rel. Resnik v. Curtis & Davis* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, our supreme court reiterated the well-settled law in Illinois regarding the theory of third-party beneficiary:

> " 'The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. This rule has been announced without variation in numerous cases decided by this court.' " *Resnik*, 78 Ill. 2d at 384, 400 N.E.2d at 919, quoting *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257-58, 178 N.E. 498, 501.

Here, the undisputed evidence shows that the contract between Verex and Arlington Federal (later assigned to Talman) was not intended to confer any benefit on plaintiff. The lender entered into a contractual relationship with Verex for the sole purpose of obtaining mortgage guaranty insurance to protect itself from loss in the event plaintiff defaulted on her mortgage loan. While plaintiff in her deposition expressed her belief that the insurance was to protect her from losing her home in the event she defaulted on her mortgage, it is clear, both from the provisions in plaintiff's contract with Talman and from those in the contract between Verex and Talman, that her understanding was mistaken.

Moreover, we concur in the following point made by the United States District Court on this issue in the recent case of *Palma v. Verex Assurance, Inc.* (S.D. Tex. 1994), No. H—91—2390, slip op. at 8-9:

> "[A]ny assertion that the borrower is the beneficiary of the mortgage insurance ignores the principle that insurance provides coverage for a risk of loss over which the insured has no control. If borrowers were to be considered insureds or beneficiaries under

a mortgage guaranty insurance policy, they could control recovery merely by withholding payment under their mortgage note."

In *Palma*, the court concluded that the plaintiff was not a third-party beneficiary of the mortgage insurance contract between Verex and the lender. (*Palma*, slip op. at 9.) Likewise, for the reasons stated, we find that plaintiff here was not a third-party beneficiary of the contract between Verex and Talman. Accordingly, we hold that summary judgment in her favor on this count was error. As a matter of law, we believe that summary judgment should be entered for Verex.

Verex next contends that the trial court erred in granting summary judgment for plaintiff on those counts of her amended complaint alleging violations of the Consumer Fraud Act (Ill. Rev. Stat. 1987, ch. 121$^1$/$_2$, par. 262) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1987, ch. 121$^1$/$_2$, par. 312), common law fraud, and negligent misrepresentation. We once again agree with Verex. The theories of fraud and negligent misrepresentation have as a common element the making of a misrepresentation to the plaintiff (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580); there is no evidence of that here. Further, the statutes at issue both require a deceptive act or practice in the course of conduct involving trade or commerce before liability will be imposed. (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 607 N.E.2d 194; *Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 511 N.E.2d 1330.) Plaintiff has presented nothing more than bare allegations in support of her claim that Verex engaged in actions intended to deceive her.

■ In short, there is no evidence that Verex made any representation, true or otherwise, to plaintiff regarding mortgage guaranty insurance, insurance premiums, or refunds of unearned insurance premiums. In fact, plaintiff testified at her deposition that she only first became aware that Verex was the mortgage guaranty insurer at the closing. It was the lender, not Verex, that discussed the subject of mortgage guaranty insurance with plaintiff. It was the lender, not Verex, that made representations to plaintiff regarding her obligation to pay for the insurance as a condition of obtaining a mortgage and her entitlement to later refunds. Plaintiff admitted that she had no contact with Verex until after she initiated this action. We fail to see, then, how Verex could have misrepresented anything to plaintiff or engaged in any deceptive act or practice involving her. As with the other counts of plaintiff's complaint, we hold that the entry of summary judgment in her favor on those counts alleging fraud, negligent misrepresentation, and statutory

violations was error. The undisputed facts indicate that summary judgment for Verex is warranted as a matter of law.

■ For the foregoing reasons, we conclude that the trial court erred in granting summary judgment for plaintiff on all seven counts of her amended complaint. As indicated, we hold that Verex, not plaintiff, is entitled to summary judgment as a matter of law on all counts. In light of this holding, plaintiff's class action suit against Verex must fail. (See *Saldana v. American Mutual Corp.* (1981), 97 Ill. App. 3d 334, 338, 422 N.E.2d 860, 863 ("Unless the plaintiff has a cause of action against the defendant, any attempted class action fails").) Accordingly, we reverse the trial court's order of May 7, 1993, granting plaintiff's motion for class certification and hereby decertify the class. We further enter judgment for Verex on all counts.

Judgment reversed.

EGAN and ZWICK, JJ., concur.