THIRD DIVISION
September 5, 2007

No. 1-06-3325

JACK GORE, Beneficiary of Bank of Ravenswood ) Appeal from
(n/k/a LaSalle National Bank) Trust No. 25-7597, and ) the Circuit Court
JACK GORE d/b/a JMC Realty, Individually and ) of Cook County
on Behalf of All Others Similarly Situated, )
                                            )
      Plaintiff-Appellant, )
                                            )
     v. ) No. 05 CH 3204
                                            )
INDIANA INSURANCE COMPANY, an Indiana )
Corporation, and OLD REPUBLIC INSURANCE )
COMPANY, a Pennsylvania Corporation, Individually and )
on Behalf of All Others Similarly Situated, ) Honorable
                                            ) Martin S. Agran,
      Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff Jack Gore (Gore) appeals from the order of the circuit court dismissing his third

amended complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS

5/2-615 (West 2004)), in which he claimed that Indiana Insurance Company (Indiana) and Old

Republic Insurance Company (Old Republic) (collectively, defendants) breached their insurance

contracts with him by violating the implied duty of good faith and fair dealing. Additionally, he

sought a declaration that defendants were obligated to refund to him that portion of the unearned

insurance premiums attributable to an unconstitutional tax levy. On appeal, Gore contends that

the circuit court erred in dismissing his complaint because (1) he stated a valid claim for breach of

contract based on the implied duty of good faith and fair dealing; and (2) he has sufficiently pled several legal theories to support a declaratory judgment action. For the following reasons, we affirm.

BACKGROUND

Gore purchased a series of annual property insurance policies from defendants covering the period from August 1993 to August 1998. Defendants are insurance companies incorporated in other states doing business in Illinois. During the relevant time period of August 1993 to August 1997, defendants, as foreign insurance companies, paid a tax equal to 2% of their net income from insurance premiums for the privilege of doing business in Illinois (privilege tax) pursuant to section 409 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/409 (West 1996)).

In 1997, the supreme court held that the privilege tax, as then written, was an unconstitutional violation of the uniformity of taxation clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2). Milwaukee Safeguard Insurance Co. v. Selcke, 179 Ill. 2d 94, 104-05, 688 N.E.2d 68, 73 (1997). Following the supreme court's holding in Selcke, section 409 was amended and defendants were required to pay the privilege tax at a reduced rate of 0.5% of their net premium income. 215 ILCS 5/409 (West 1998).

Gore, and a proposed class of similarly situated insureds, sued defendants to recover the amount of the excess privilege tax they claim to have paid in the form of higher insurance premiums. Specifically, Gore alleged that defendants passed the privilege tax on to them as an "undisclosed pass-through charge" included in the insurance premiums they paid. Gore pursued

2

various causes of action in law and equity in the original complaint and the first and second amended complaints based upon the same set of alleged facts. The circuit court dismissed all of Gore's prior complaints.

Gore then filed a third amended complaint (complaint), in which he asserted a claim for breach of contract based on defendants' alleged breach of the implied covenant of good faith and fair dealing. The complaint also included a declaratory judgment count in which Gore sought a declaration of the "parties' relevant rights and obligations under Illinois law."

Gore attached to his complaint two "exemplary" insurance contracts, one from each defendant. The representative Indiana contract covered the period from August 29, 1993, to August 29, 1994, and listed the address of the premises covered, the type of coverage provided, the coverage limits of the policy, and a composite premium price. The Old Republic contract covered the period from August 29, 1997, to August 29, 1998, and contained the same information as the Indiana contract. Additionally, both contracts contained the same statement: "In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy." Neither contract itemized the charges included in the premium price. Gore did not attach any additional contracts or terms of the insurance coverage to the complaint.

On defendants' motions, the circuit court dismissed the complaint with prejudice and without addressing the issue of class certification. Gore then filed this timely appeal.

ANALYSIS

Our standard of review of a motion to dismiss under section 2-615 is *de novo*. Mid-West

Energy Consultants, Inc. v. Covenant Home, Inc., 352 Ill. App. 3d 160, 161, 815 N.E.2d 911, 913 (2004). The question we must address is whether the allegations of the complaint, when viewed in the light most favorable to plaintiff, sufficiently stated a cause of action upon which relief may be granted. Mid-West Energy Consultants, 352 Ill. App. 3d at 161, 815 N.E.2d at 913. The complaint must allege facts in support of the essential elements of a cause of action; however, plaintiff cannot rely on conclusions of fact or law unsupported by factual allegations. Mid-West Energy Consultants, 352 Ill. App. 3d at 161, 815 N.E.2d at 913. Furthermore, 'an actionable wrong cannot be made out merely by characterizing acts as having been wrongfully done.' Unterschuetz v. City of Chicago, 346 Ill. App. 3d 65, 69, 803 N.E.2d 988, 991 (2004), quoting Weidner v. Midcon Corp., 328 Ill. App. 3d 1056, 1059, 767 N.E.2d 815, 819 (2002).

In order to state a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid, enforceable contract; (2) performance of the contract by the plaintiff; (3) a breach by the defendant; and (4) damages resulting from the breach. Unterschuetz, 346 Ill. App. 3d at 69, 803 N.E.2d at 991.

Gore contends that defendants breached the insurance contracts by violating the duty of good faith and fair dealing implied therein. Specifically, he alleged that "by collecting portions of premiums including the unconstitutional [privilege tax]–including for portions collected at pre-1998 levels for policy periods inclusive of 1998 and/or after 1998–[defendants] breached their respective duties of good faith and fair dealing."

It is well established that the duty of good faith and fair dealing is implied in every contract. Dayan v. McDonald's Corp., 125 Ill. App. 3d 972, 991, 466 N.E.2d 958, 971 (1984).

1-06-3325

Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract. Cramer v. Insurance Exchange Agency, 174 Ill. 2d 513, 523-24, 675 N.E.2d 897, 903 (1996).

Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Dayan, 125 Ill. App. 3d at 990, 466 N.E.2d at 971. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations. Dayan, 125 Ill. App. 3d at 991, 466 N.E.2d at 972. However, in general, it is not an independent source of duties for contracting parties. Cramer, 174 Ill. 2d at 525, 675 N.E.2d at 903.

Gore's breach of contract claim fails for several reasons. First, although he alleged that defendants "had complete discretion in the amount of the [privilege tax], if any, to pass on" to him through the premiums, his allegation does not invoke the type of discretion contemplated by Dayan or its progeny. Both defendants' contracts state the parties' obligations as follows: "In return for [Gore's] payment of the premium, and subject to all the terms of this policy, [defendants] agree with [Gore] to provide the insurance as stated in [each] policy." Gore agreed to pay the stated premium prices and defendants agreed to provide insurance coverage in return. In the context of this case, defendants had no discretion to decide whether they would provide the coverage indicated. Absent the requisite discretion prescribed by Dayan, Gore cannot state a

5

claim for a breach of the duty of good faith and fair dealing. See, *e.g.*, <u>Anderson v. Burton Associates, Ltd.</u>, 218 Ill. App. 3d 261, 267, 578 N.E.2d 199, 204 (1991) (dismissing counterclaim for breach of duty of good faith and fair dealing where counterdefendant had no discretion in performing his contractual obligations).

Second, Gore attacked decisions that defendants made before the creation of any contracts that could give rise to defendants' duties of good faith and fair dealing. It is axiomatic that only duties arising out of a contract itself can give rise to a breach. <u>Martin v. State Farm Mutual Automobile Insurance Co.</u>, 348 Ill. App. 3d 846, 853, 808 N.E.2d 47, 54 (2004). Here, Gore asserted that defendants breached their duties of good faith by including the privilege tax in the particular combination of costs, expenses, risks, and profits used to calculate the premium prices. However, defendants made those pricing decisions before they offered–and Gore accepted–the resulting premium prices, before the parties entered into legally binding contracts, and before any duty of good faith and fair dealing could have arisen under those contracts. Accordingly, Gore's claim cannot stand. See <u>Martin</u>, 348 Ill. App. 3d at 853, 808 N.E.2d at 54 (holding that precontractual actions cannot form the basis of a breach of contract claim).

Even if defendants had included the privilege tax in calculating the premiums, they would not have acted in bad faith. It is well established that defendants are entitled to reimburse themselves for taxes incurred as a condition of a sale. <u>Mosiman v. BMW Financial Services NA, Inc.</u>, 321 Ill. App. 3d 386, 391, 748 N.E.2d 313, 391 (2001). A business may elect to increase its prices to offset a tax burden "just as it could have done if faced with other types of additional costs." <u>Wexler v. Wirtz Corp.</u>, 211 Ill. 2d 18, 26, 809 N.E.2d 1240, 1245 (2004). Whether to

pass a tax on to the consumer or absorb the cost of a tax is "purely a business decision." Wexler, 211 Ill. 2d at 26, 809 N.E.2d at 1245. As foreign insurers, these defendants were required to pay the privilege tax as a condition of collecting insurance premiums from Illinois consumers. 215 ILCS 5/409 (West 1992). How they chose to recoup the cost of that tax burden was "purely a business decision" that does not expose them to liability.

Moreover, this court has long recognized, with approval, that contracting parties may agree to have the purchaser pay a tax either as part of a composite price or in addition to the stated price for the goods. Crerar Clinch Coal Co. v. Board of Education of City of Chicago, 13 Ill. App. 2d 208, 216, 141 N.E.2d 393, 397 (1957). In essence, the question is one of contract construction. Where the language of a contract unambiguously reflects that the "composite price to be paid *** [is] stated in the contracts [and] the amount of the [sales tax is] not specified," the tax is considered to have been "absorbed or buried in the contract price." Crerar Clinch Coal, 13 Ill. App. 2d at 211, 141 N.E.2d at 395; Cohon v. Oscar L. Paris Co., 17 Ill. App. 2d 21, 24-25, 149 N.E.2d 472, 474 (1958) (recognizing the distinction between contracts containing a composite price term and those itemizing the tax separately from the price of goods). The contract will be enforced as written and the purchaser will pay the composite price agreed to, regardless of any change in the tax rate. Crerar Clinch Coal, 13 Ill. App. 2d at 211-12, 141 N.E.2d at 395.

Here, Gore entered into contracts with defendants to pay the composite premium prices as stated in each of the insurance contracts. The premiums were not itemized to show the proportion charged for insurance coverage, taxes, or any other particular expense, nor were they

7

required to be. If indeed defendants considered the privilege tax in calculating the composite price, the tax was absorbed into the price, as were the other component parts of the negotiated price. Gore and defendants contracted freely on terms apparently favorable to both, and the insurance contracts must be enforced as written. In re Foreman, 365 Ill. App. 3d 608, 611, 850 N.E.2d 387, 390 (2006). We will not rewrite these contracts because Gore now seeks a better bargain. See F.H. Prince & Co. v. Towers Financial Corp., 275 Ill. App. 3d 792, 804-05, 656 N.E.2d 142, 151 (1995); Crerar Clinch Coal, 13 Ill. App. 2d at 213, 141 N.E.2d at 396. Thus, we cannot now allow Gore to claim that defendants acted in bad faith in computing the prices that he agreed to pay.

Gore further alleged that defendants acted in bad faith by charging him the same premium prices, and therefore continued to collect the 2% privilege tax, after the Selcke decision rendered that rate unconstitutional. He relied on the Old Republic contract covering the period from August 1997 to August 1998 for support. However, that plain language of that contract belies his claim.

Gore was required to attach to his complaint the written instruments upon which his claim is based, and we treat such exhibits as part of the complaint itself. 735 ILCS 5/2-606 (West 2006); Bajwa v. Metropolitan Life Insurance Co., 208 Ill. 2d 414, 431, 804 N.E.2d 519, 531 (2004). Where allegations made in the body of the complaint conflict with facts disclosed in the exhibits, the exhibits will control and the allegations will not be taken as true in evaluating the sufficiency of the complaint. Bajwa, 208 Ill. 2d at 431-32, 804 N.E.2d at 531; Crerar Clinch Coal, 13 Ill. App. 2d at 217, 141 N.E.2d at 398.

Here, the Old Republic contract reveals that although Selcke was decided during the term of the Old Republic contract, the 2% privilege tax rate was still in effect at the time that contract was signed six months earlier. Therefore, if Old Republic did include the privilege tax in that contract, it did so using the then-current privilege tax rate. Defendants would not have been obligated to reduce the negotiated composite premium price, or the privilege tax rate used to determine it, after the Selcke decision invalidated the tax rate. See Crerar Clinch Coal, 13 Ill. App. 2d at 211, 141 N.E.2d at 395. Gore failed to attach any other contracts to the complaint that were created after the Selcke decision that would support his claim, whether issued by Old Republic or Indiana. Absent such allegations in or attached to the complaint, Gore cannot establish that defendants collected taxes in an amount exceeding their tax liability. See Crerar Clinch Coal, 13 Ill. App. 2d at 217, 141 N.E.2d at 397-98.

Finally, we note Gore's assertion that "by collecting premiums and [privilege taxes] from [him] (e.g., in 1997) for policy periods inclusive of 1998 or beyond, but at pre-1998 unconstitutionally high [privilege tax] levels–[defendants] violate [Gore's] rights to remit only constitutional levels of the [privilege tax], and to pay premiums that reflect same." Notwithstanding the conclusory nature of the statement, which prohibits us from considering it in evaluating a complaint (Mid-West Energy Consultants, 352 Ill. App. 3d at 161, 815 N.E.2d at 913), we fail to see how a purported constitutional violation supports a cause of action for breach of contract. Nevertheless, Gore has cited no specific constitutional provisions that allegedly were violated, or any facts to support this claim, which is a violation of Supreme Court Rule 341(h)(7). 210 Ill. 2d R. 341(h)(7). This court 'is not a depository in which an appellant may dump its

9

arguments without factual foundation in hopes that [the court] will sift through the entire record to find support for a determination favorable to appellant's position.' Mikrut v. First Bank of Oak Park, 359 Ill. App. 3d 37, 51-52, 832 N.E.2d 376, 387 (2005), quoting Coffey v. Hancock, 122 Ill. App. 3d 442, 444, 461 N.E.2d 64, 66 (1984). Thus, the argument is waived and we will not consider it. Vine Street Clinic v. Healthlink, Inc., 222 Ill. 2d 276, 301, 856 N.E.2d 422, 438 (2006). For all of the foregoing reasons, we affirm the order dismissing the breach of contract claim for failure to state a cause of action.

Gore's complaint also contained a declaratory judgment count in which he sought a declaration of the parties' unspecified "rights and liabilities under Illinois law." To maintain a claim for declaratory judgment, a plaintiff must establish the following: (1) the plaintiff has a legal tangible interest; (2) the defendant has an opposing interest; and (3) an actual case or controversy exists between the parties. Beahringer v. Page, 204 Ill. 2d 363, 372, 789 N.E.2d 1216, 1223 (2003). A plaintiff seeking declaratory relief must demonstrate standing to raise the claim by establishing that it 'is not merely curious or concerned about the outcome but possesses some personal claim, status, or right, a distinct and palpable injury to which is fairly traceable to the defendant's conduct and substantially likely to be prevented or redressed by the grant of such relief.' Adams v. Meyers, 250 Ill. App. 3d 477, 483-84, 620 N.E.2d 1298, 1303 (1993), quoting Kluk v. Lang, 125 Ill. 2d 306, 314, 531 N.E.2d 790, 793 (1988).

Gore alleged that he had a "substantial legal interest" in the portions of the premiums he paid that were attributable to the privilege tax. He seems to suggest that his right to a refund of those premiums is based on defendants' purported violation of sections 379.1 and 393.1 of the

Insurance Code governing unearned premium reserves. 215 ILCS 5/379.1, 393.1(1) (West 2004).

Section 379.1 of the Insurance Code requires every eligible insurance company to "maintain an unearned premium reserve on all policies *** in force which shall be calculated in the manner described in Section 393.1 of [the Insurance Code]." 215 ILCS 5/379.1 (West 2004). Under section 393.1, insurers' unearned premium reserve must contain, at a minimum, "the company's actual liability to all its insureds for the return of gross unearned premiums." 215 ILCS 5/393.1 (West 2004).

The statute does not define an unearned premium; however, this court has construed it in the following way:

> "When a[n insured] cancels coverage *** during a period for which it has already paid for the coverage, [the insurer] refunds to the [insured] the portion of the paid premium covering the months for which insurance will no longer be needed. This amount is known as the unearned premium." Peleschak v. Verex Assurance, Inc., 272 Ill. App. 3d 1077, 1079, 651 N.E.2d 562, 564 (1995).

The Director of Insurance (Director) requires that insurers maintain certain reserves "for the purpose of adequately protecting the insured and securing the solvency of" the insurer. 215 ILCS 5/378 (West 2004). The Director enforces and executes all insurance laws and investigates any violations of these reserve requirements. Indeed:

> "Whenever it appears to the Director that any [insurer] is

11

conducting its business and affairs in such a manner as to threaten to render it insolvent, *** or is conducting its business and affairs in a manner which is hazardous to its policyholders, *** and that irreparable loss and injury to the property and business of a person has occurred *** the Director may, without notice, and before hearing, issue and cause to be served upon such person or company an order requiring such person or company to forthwith cease and desist from engaging further in the acts *** which are causing such conduct *** to exist." 215 ILCS 5/401.1(2) (West 2004).

The Director may then fine the offending insurer each day it is in violation of these statutes and, ultimately, revoke the insurers license if it fails to comply. 215 ILCS 4/400.1(6) (West 2004).

The Insurance Code sections cited by Gore and the corresponding provisions of the Illinois Administrative Code are regulations on insurers by the Department of Insurance as a condition of maintaining their licenses to provide insurance to Illinois consumers. See also 50 Ill. Adm. Code §§908, 911, as amended November 25, 1968, and November 8, 1963, respectively. The consequences for violating the unearned premium reserve provisions include fines and, ultimately, revocation of an insurer's license. Given the purpose and remedies for these provisions, we cannot find or conceive of any authority that endows an insured with a right of action against an insurer for failing to maintain unearned premium reserves in the manner prescribed. Moreover, any violation of the unearned premium statute will not be redressed by refunding premiums to the insured, as Gore seeks. Thus, we are not persuaded that Gore's "legal

tangible interest" derives from these statutes and he has not otherwise established standing to raise the claim. See Adams, 250 Ill. App. 3d at 484, 620 N.E.2d at 1303.

Gore nevertheless argues that he has provided "a valid legal theory" upon which to base his declaratory judgment claim, "irrespective of whether any of the [Insurance Code] statutes endow him with a private cause of action." However, the threshold requirement for establishing a declaratory judgment claim is not whether he can plead any legal theory upon which to proceed, but whether he can plead a legal theory in which he has a personal legal interest. See Beahringer, 204 Ill. 2d at 372, 789 N.E.2d at 1223; Adams, 250 Ill. App. 3d at 484, 620 N.E.2d at 1303. Gore cannot plead such a theory for the additional reasons that follow.

Gore alleged that "the collection of the unconstitutional tax from [him] voids the policies or terms thereof providing for the premium charge" and, as a result, "he has a legal right to a refund" of that portion of the premiums attributable to the privilege tax. However, as we have discussed, defendants did not act improperly by passing the privilege tax on to him, if indeed they did so. Shifting a tax burden to consumers is not sleight of hand; it is a calculated business decision. Wexler, 211 Ill. 2d at 26, 809 N.E.2d at 1245; Mosiman, 321 Ill. App. 3d at 391, 748 N.E.2d at 318. More importantly, including the privilege tax in a composite premium price is an acceptable practice that does not void valid insurance contracts or require defendants to return any portion of the premiums to Gore. Crerar Clinch Coal, 13 Ill. App. 2d at 211, 141 N.E.2d at 395. Thus, Gore cannot establish that he has a legal tangible interest in a refund of premiums based on any injury traceable to defendants' conduct. See Adams, 250 Ill. App. 3d at 484, 620 N.E.2d at 1303.

Finally, Gore argued that "defendants' alleged conduct of not remitting such [privilege taxes] violates Illinois public policy aimed at preventing excessive or unfairly discriminatory insurance rates, encouraging competition between insurers to the fullest extent possible, and fixing and determining insurance rates," citing to repealed or inapplicable Insurance Code statutes.[1]  He urged us to "infer" that the "conduct alleged" is contrary to the public policy goals of the Insurance Code.

However, Gore again fails to inform us of any legal basis for his contention or plead facts in support of his legal conclusion, such as the behavior from which we are to "infer" a public policy violation, how that violation allegedly occurred, or how the insurance contracts are related to any such violation.  He has again forfeited the argument.  Mikrut, 359 Ill. App. 3d 37 at 51-52, 832 N.E.2d at 387; 210 Ill. 2d R. 341(h)(7).

Although there are no clear allegations in the complaint, we suspect that Gore protests defendants' collection of the privilege tax through the insurance contracts as generally violative of public policy, whether before or after the privilege tax rate was invalidated by Selcke.  Were we able to consider that argument, notwithstanding Gore's inability to properly plead it, we would

---

[1] Gore cited "215 ILCS 5/472.1," repealed in 1988, and "215 ILCS 5/488," repealed in 1970.  He also cited "215 ILCS 5/460," which addresses the competitiveness of the worker's compensation and employers' liability insurance markets, neither of which are applicable here.  Finally, he cited "215 ILCS 5/1201," which pertains to a legislative study commissioned by the General Assembly to examine the relationship between insurance rates and income.

review it in light of the principles recently reexamined by our supreme court in <u>Vine Street Clinic</u>, 222 Ill. 2d at 300, 856 N.E.2d at 438, and <u>Mohanty v. St. John Heart Clinic, S.C.</u>, 225 Ill. 2d 52, 64-65, 866 N.E.2d 85, 92 (2006).

This jurisdiction has a long history of upholding parties' rights to freely contract. <u>Mohanty</u>, 225 Ill. 2d at 64, 866 N.E.2d at 92. Therefore, courts are reluctant to declare private contracts void as against public policy and will not do so unless they are " 'clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy' " or it is " 'clearly shown that the contract is manifestly injurious to the public welfare.' " <u>Mohanty</u>, 225 Ill. 2d at 65, 866 N.E.2d at 92, quoting <u>Vine Street Clinic</u>, 222 Ill. 2d at 299, 856 N.E.2d at 438, quoting <u>Schumann-Heink v. Folsom</u>, 328 Ill. 321, 330, (1927). Consequently, plaintiffs carry a heavy burden to show that private contracts are against the public policy of the state. <u>Mohanty</u>, 225 Ill. 2d at 64, 866 N.E.2d at 92.

Gore has failed to sustain this high burden. Assuming that he correctly stated the public policy goals of the Insurance Code as "preventing excessive rates," Gore cannot show that the insurance contracts at issue here violated that or any similar policy.

We have discussed at length the long-standing principles that permit sellers to recover taxes from purchasers at their option. <u>Wexler</u>, 211 Ill. 2d at 26, 809 N.E.2d at 1245; <u>Mosiman</u>, 321 Ill. App. 3d at 391, 748 N.E.2d at 391. Sellers may include those taxes in calculating composite price terms to be offered to prospective purchasers. <u>Crerar Clinch Coal</u>, 13 Ill. App. 2d at 216, 141 N.E.2d at 397. Even if the taxes are later found to be unconstitutional, if a contract reflects that a purchaser agreed to pay a composite price, the purchaser is not absolved

of paying that stated contract price.  Crerar Clinch Coal, 13 Ill. App. 2d at 211, 141 N.E.2d at 395.  Parties must be allowed to enforce those contracts as written.  Foreman, 365 Ill. App. 3d at 611, 850 N.E.2d at 390.  Finally, there is no indication that these defendants continued to charge Gore at the 2% privilege tax rate after it had been declared unconstitutional.

In light of these principles, Gore cannot meet his burden of showing that defendants' insurance contracts or actions violated the constitution, statutes, or laws of this state.  He also cannot show that the contracts are "manifestly injurious to the public welfare" to overcome decades of judicial opinions to the contrary.  Accordingly, Gore's claim for declaratory relief under this theory also fails.

For all of the foregoing reasons, we affirm the order of the circuit court dismissing the third amended complaint.

Affirmed.

GREIMAN and CUNNINGHAM, JJ., concur.